UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

LIZABETH J. AUGUSTINE,                    :

                                Plaintiff,    :        Case No. 07 Civ. 8362 (RWS)(DFE)

                - against -                   :        **<u>AFFIDAVIT OF</u>**
                                              :        **<u>BETSY K. SILVERSTINE, ESQ.</u>**
AXA EQUITABLE LIFE INSURANCE               :
COMPANY,                                    :

                                Defendant.    :

------------------------------------------------------------- x

**BETSY K. SILVERSTINE**, states the following to be true under penalties of perjury:

1.      I am a member of the bar of the State of New York, duly admitted to practice before the Southern District of New York, an associate of The Roth Law Firm, PLLC, attorneys for Plaintiff Lizabeth J. Augustine ("Plaintiff"), and submit this Affidavit in support of Plaintiff's Motion to Amend First Complaint.

2.      Annexed hereto as <u>Exhibit A</u> is a true and correct copy of the parties' Joint Rule 26(f) Report and Proposed Joint Discovery Plan.

3.      Annexed hereto as <u>Exhibit B</u> is a true and correct copy of correspondence from AXA's counsel to Plaintiff's counsel dated March 11, 2008.

4.      Annexed hereto as <u>Exhibit C</u> is a true and correct copy of correspondence from AXA's counsel to Plaintiff's counsel dated April 11, 2008.

5.      Annexed hereto as <u>Exhibit D</u> is a true and correct copy of correspondence from Plaintiff's counsel to AXA's counsel dated April 18, 2008.

6.      Annexed hereto as <u>Exhibit E</u> is a true and correct copy of the proposed First Amended Complaint and accompanying Exhibits.

Dated: New York, New York

        May 29, 2008

                                                        _____
                                                        Betsy K. Silverstine

**<u>EXHIBIT A</u>**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LIZABETH J. AUGUSTINE,

                           Plaintiff,

              - against -

AXA FINANCIAL, INC. d/b/a
AXA EQUITABLE LIFE INSURANCE CO.

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**ECF CASE**

Case No. 07 Civ. 8362 (RWS)(DFE)

**JOINT RULE 26(f) REPORT
AND PROPOSED JOINT
DISCOVERY PLAN**

The parties file this joint report pursuant to Fed. R. Civ. P. 26(f):

    1.    Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the parties conferred by telephone to conduct a Planning Meeting on January 3, 2008. Betsy Silverstine, Esq. of The Roth Law Firm, PLLC attended for Plaintiffs. Dorothy Rosensweig, Esq. and Anna A. Cohen, Esq. of the law firm of Epstein Becker & Green P.C. attended for Defendants.

    2.    Pursuant to the Court's November 28, 2007 Order, the parties discussed the nature and basis for their claims and defenses, the possibility of settlement, pre-trial discovery issues and discovery plan, exchange of initial disclosures and discovery requests served by Defendant.

    3.    The parties stipulate and agree, subject to the Court's approval, to the following deadlines:

**EXHIBIT**

**A**

| Date | Activity |
|---|---|
| January 9, 2008 | Service of automatic disclosures pursuant to Fed. R. Civ. P. 26(a) |
| February 15, 2008 | Deadline for motions to amend pleadings including joinder of additional parties |
| Plaintiff must serve requests on Defendant by February 15, 2008. | Date for service of initial document production demands and interrogatory requests |
| August 31, 2008 | Discovery closes |
| October 31, 2008 | Deadline for filing any motion for summary judgment |
| October 31, 2008 (if no motion for summary judgment; if motion for summary judgment, 30 days after decision on motion) | Date for the submission of the pre-trial order |
|  | Trial Date |

4.     The parties also discussed the subjects on which they believe they may require discovery and the arrangements for such discovery:

a.     Plaintiffs anticipate that they will require discovery concerning, among other things, policies and procedures relevant to this lawsuit, including, but not limited to, Plaintiff's job performance and history, FMLA policies and procedures and documents regarding the "Reorganization Justification Document" and elimination of Plaintiff's position.

b.     Defendants anticipate that they will require discovery concerning, among other things, Plaintiff's work performance, attendance, schedule, FMLA and other time off requested and taken and reasons therefore and Plaintiff's daughter's medical condition.

c.     Due to the confidential nature of certain documents and information that are likely to be the subject of the parties' respective discovery requests, the

2

parties agree that discovery and inspection of such confidential documents and information will be permitted upon the "So Ordering" of a Confidentiality Stipulation.

     5.     The parties agree that nothing herein constitutes a waiver of any kind, including as to a party's right to propound discovery not described herein, and as to any objection to any discovery described herein.

     6.     The parties agree that discovery demands must be served at least thirty (30) days in advance of the discovery completion date to support a request for court intervention. Any motion for court intervention relating to discovery must be filed at least twenty (20) days prior to discovery completion.

     7.     The parties agree that any request for modification of a scheduling order must be filed and served prior to the discovery completion date.  A scheduling order will be modified by the Court only upon a showing of good cause. Fed. R. Civ. P. 16(b).

8.    The parties agree that service of documents by overnight mail is effective service and is complete upon mailing.

Dated:  January 9, 2008

**THE ROTH LAW FIRM, PLLC**

By _____
Richard A. Roth, Esq.

545 Fifth Avenue, Suite 960
New York, NY 10017
(212) 542-8882
rich@rrothlaw.com
*Attorneys for Plaintiff*

**EPSTEIN BECKER & GREEN, P.C.**

By _Dorothy Rosensweig_
Dorothy Rosensweig, Esq.
Anna A. Cohen, Esq.

250 Park Avenue
New York, NY 10117
(212) 351-4500
drosensweig@ebglaw.com
acohen@ebglaw.com
*Attorneys for Defendant*

**SO ORDERED:**

_____
Hon. Robert W. Sweet, U. S. D. J.

1·14·08

4

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW
250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
212.351.4500
FAX: 212.661.0989
EBGLAW.COM

ANNA A. COHEN
TEL: 212.351.4922
FAX: 212.878.8633
ACOHEN@EBGLAW.COM

March 11, 2008

**VIA ELECTRONIC MAIL**
**AND FEDERAL EXPRESS**

Betsy K. Silverstine, Esq.
The Roth Law Firm PLLC
545 Fifth Avenue, Suite 960
New York, New York  10017-3609

      Re:   Lizabeth J. Augustine against AXA Financial, Inc.
           d/b/a AXA Equitable Life Insurance Co.
           Case No. 07 Civ. 8362 (RWS)(DFE)

Dear Betsy:

      Enclosed please find Defendant's Answers and Objections to Plaintiff's First Request for Production of Documents to Defendant.  Documents bates stamped AXA/LA 000001 through AXA/LA 003538 are provided on the enclosed CD, as you requested.  All documents have been marked "Confidential" pursuant to the Confidentiality Stipulation.  Also enclosed is Defendant's Privilege Log.

                   Very truly yours,

                   Anna A. Cohen

Enclosures (CD via Federal Express Only)

**EXHIBIT**

**B**

ATLANTA · CHICAGO · DALLAS · HOUSTON · LOS ANGELES · MIAMI
NEWARK · NEW YORK · SAN FRANCISCO · STAMFORD · WASHINGTON, D.C.

NY:2472953v1

EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW
250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
212.351.4500
FAX: 212.661.0989
EBGLAW.COM

ANNA A. COHEN
TEL: 212.351.4922
FAX: 212.878.8633
ACOHEN@EBGLAW.COM

April 11, 2008

**VIA FEDERAL EXPRESS**

Betsy K. Silverstine, Esq.
The Roth Law Firm PLLC
545 Fifth Avenue, Suite 960
New York, New York  10017-3609

>          Re:    Lizabeth J. Augustine against AXA Financial, Inc.
>                   d/b/a AXA Equitable Life Insurance Co.
>                   Case No. 07 Civ. 8362 (RWS)(DFE)

Dear Betsy:

Enclosed are additional documents within the scope of the parties' January 15, 2008 agreement as to the scope of Defendant's response to request number 18 of Plaintiff's First Request for Production of Documents. Also enclosed are a revised privilege and redaction log. This production includes password protected documents. The additional documents are bates stamped AXA/LA 003539 - AXA/LA 003705.

Please contact me with any questions.

Very truly yours,

Anna A. Cohen

Enclosures

**EXHIBIT**

**C**

ATLANTA  •  CHICAGO  •  DALLAS  •  HOUSTON  •  LOS ANGELES  •  MIAMI
NEWARK  •  NEW YORK  •  SAN FRANCISCO  •  STAMFORD  •  WASHINGTON, D.C.

NY:2493298v2           EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY

## Betsy Silverstine

| | |
|---|---|
| **From:** | Betsy Silverstine |
| **Sent:** | Friday, April 18, 2008 4:05 PM |
| **To:** | 'Dorothy Rosensweig' |
| **Cc:** | 'Anna A. Cohen' |
| **Subject:** | augustine v. axa |

**Attachments:** unexecuted.1st.amended.complaint.4.18.08.pdf

Dear Dotty:

Please find attached a copy of Plaintiff's First Amended Complaint.  Pursuant to Fed. R. Civ. P. 15(a), I am submitting it to you to obtain your written consent prior to filing.  Please call me upon your convenience, and we can discuss which paragraphs and exhibits you believe present a problem under the confidentiality order. As you can see, the pleading is unexecuted, as it is obviously not ready to be submitted to the Court.  Thank you. Enjoy the nice weather this weekend!  Speak with you soon.

Sincerely,

**Betsy K. Silverstine, Esq.**
**Admitted in New York and Florida.**
The Roth Law Firm, PLLC
545 Fifth Avenue
Suite 960
New York, NY 10017
Tel: 212 542 8882
Fax: 212 542 8883

This electronic mail message contains information that (a) is or may be LEGALLY PRIVILEGED, CONFIDENTIAL, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) is intended only for the use of the Addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an addressee, you are hereby notified that reading, using, copying, or distributing any part of this message is strictly prohibited. If you have received this electronic mail message in error, please contact us immediately and take the steps necessary to delete the message completely from your computer system.

**EXHIBIT**

**D**

**EXHIBIT**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**E**

------------------------------------------------------------- x

LIZABETH J. AUGUSTINE,                                    :

                 **Plaintiff,**          :   Case No. 07 Civ. 8362 (RWS)(DFE)

          - against -          :   **FIRST AMENDED COMPLAINT**

AXA EQUITABLE LIFE INSURANCE        :   **JURY TRIAL DEMANDED**
COMPANY; JAMES C. DENNIS; JEANNE
O'CONNOR; CYNTHIA D. STERN; and      :
LISA A. DEROCHE,

                 **Defendants.**          :

------------------------------------------------------------- x

     Plaintiff Lizabeth J. Augustine ("Plaintiff"), by and through counsel, The Roth Law Firm,

PLLC, located at 545 Fifth Avenue, Suite 960, New York, New York 10017, and as and for her

First Amended Complaint against AXA Equitable Life Insurance Company ("AXA"); James C.

Dennis ("Mr. Dennis"); Jeanne O'Connor ("Ms. O'Connor"); Cynthia Stern ("Ms. Stern"); and

Lisa DeRoche ("Ms. DeRoche") (collectively "Defendants"), states as follows:

## NATURE OF THE ACTION

     This is an action under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et*

*seq.* ("FMLA") and New York City Human Rights Laws, §§ 8-107(1)(a) and 8-107(20) ("NYC

Human Rights Laws") to provide relief to a woman who, after twenty years of service to AXA,

was terminated by Defendants in violation of those laws. As alleged herein with more

specificity, at all relevant times, Defendants were aware of Plaintiff's daughter's medical

condition. Indeed, Plaintiff took FMLA intermittent leave twice before 2006. Although Plaintiff

again requested a reduced leave schedule in May of 2006 due to her daughter's health, none of

her absences thereafter were marked as FMLA-qualifying. Further, Plaintiff was disciplined for

those absences. In December of 2006, Plaintiff again requested a reduced leave schedule, which

was also not granted.  Thereafter, in January of 2007, Plaintiff was notified that her job was

eliminated.  Plaintiff alleges that her termination was because of her absences, which should

have been FMLA-protected, was in retaliation for requesting additional FMLA leave and was

because of her daughter's condition.

## **PARTIES**

1.    Plaintiff is a citizen of the United States, residing at 9 Painted Wagon Road,

Holmdel, New Jersey 07733 and was an "eligible employee" of AXA within the meaning of the

FMLA, having worked for AXA for at least 1,250 hours of service during the previous 12-month

period.

2.    AXA is a company authorized to do business in the State of New York,

maintaining its principal office at 1290 Avenue of the Americas, New York, New York 10104

("principal office") and is an "employer" within the meaning of the FMLA, employing 50 or

more employees.

3.    Upon information and belief, Mr. Dennis is a citizen of the United States,

employed by AXA in its principal office as the Senior Vice President of the Customer Marketing

Group.  While Plaintiff was employed by AXA, Mr. Dennis's job responsibilities related to: (i)

Plaintiff's termination; (ii) supervising or controlling Plaintiff's work schedule or conditions of

Plaintiff's employment; (iii) determining Plaintiff's rate and method of payment; and (iv)

maintaining Plaintiff's employment records.

4.    Upon information and belief, Ms. O'Connor is a citizen of the United States,

employed by AXA in its principal office as the Vice President of the Acquisition, Cross-Sell &

Retention Division of the Customer Marketing Group.  While Plaintiff was employed by AXA,

Ms. O'Connor's job responsibilities related to: (i) Plaintiff's termination; (ii) supervising or

controlling Plaintiff's work schedule or conditions of Plaintiff's employment; (iii) determining

Plaintiff's rate and method of payment; and (iv) maintaining Plaintiff's employment records.

5.    Upon information and belief, Ms. Stern is a citizen of the United States, employed

by AXA in its principal office as the Vice President of the Customer Marketing Group.  While

Plaintiff was employed by AXA, Ms. O'Connor's job responsibilities related to: (i) Plaintiff's

termination; (ii) supervising or controlling Plaintiff's work schedule or conditions of Plaintiff's

employment; (iii) determining Plaintiff's rate and method of payment; and (iv) maintaining

Plaintiff's employment records.

6.    Upon information and belief, Ms. DeRoche is a citizen of the United States,

employed by AXA in its principal office as the Human Resources Relationship Manager.  While

Plaintiff was employed by AXA, Ms. DeRoche's job responsibilities related to: (i) Plaintiff's

termination; (ii) supervising or controlling Plaintiff's work schedule or conditions of Plaintiff's

employment; (iii) determining Plaintiff's rate and method of payment; and (iv) maintaining

Plaintiff's employment records.

## JURISDICTION AND VENUE

7.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C.

§ 1331 because the claims arise under the laws of the United States and in particular under the

FMLA.

8.    Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because

AXA resides, for the purpose of venue pursuant to 28 U.S.C. § 1391(c), in this judicial district,

and because a substantial part of the events giving rise to the claims herein occurred in this

district.

9.  Section 107 of the FMLA permits Plaintiff to proceed directly in this Court

without resort to, or exhaustion of, administrative remedies.

## FACTUAL BACKGROUND

10. Plaintiff worked for AXA from March 1, 1987 through March 2, 2007.

Throughout those twenty years, Plaintiff loyally and competently served AXA.

11. In 2000, Plaintiff gave birth to her daughter, Megan McEvoy ("Megan").  Five

months later, Megan was diagnosed with Recurrent Respiratory Papillomatosis, which is a life-

threatening condition.  As a result of that serious illness, to date, Megan has undergone

approximately 60 surgeries and two experimental treatment protocols.

12. On or about December 27, 2002, Plaintiff submitted to AXA a form, which stated:

(i) Megan's condition could continue until puberty or adulthood; (ii) Plaintiff would have to

work intermittently or less than a full schedule as a result of the condition until the disease

abates; (iii) possibly twelve treatments per year would be required over the next ten to twenty

years; and (iv) Plaintiff may need to be absent from work three to seven days around each

treatment. *See Certification of Health Care Provider (Dated 12/27/2002), a copy of which is*

*annexed hereto as Exhibit A.*  Thereafter, AXA granted Plaintiff a "reduced leave schedule"

under the FMLA.

13. On or about May 23, 2006, Plaintiff submitted a form requesting a "reduced leave

schedule" under the FMLA because Plaintiff requested a "leave schedule that reduces the usual

number of hours per workweek, or hours per workday, of an employee." 29 U.S.C. § 2611(9).

Specifically, Plaintiff requested that she be allowed to arrive "after 9 and leave at 4:15." Plaintiff further stated that the reason she needed the schedule was her "6 year old daughter's health," and that it was not expected to be a temporary arrangement. *See Flexible Work Arrangement Summary (Dated 5/23/06), a copy of which is annexed hereto as Exhibit B.*

14. After receiving the form, however, although it was Defendants' responsibility under 29 C.F.R. § 825.208, Defendants did not designate the leave requested as FMLA-qualifying and give notice of the designation to Plaintiff. Defendants also did not dispute the leave as FMLA-qualifying and have documented discussions with Plaintiff. Defendants simply remained silent, misleading Plaintiff into believing she was protected by the FMLA.

15. In June of 2006, Ms. O'Connor was aware that there was an issue involving Plaintiff and the FMLA, because Ms. O'Connor requested that Plaintiff update a FMLA form. Plaintiff, however, was never given a form to update. In addition, Plaintiff believed she had taken care of the issue by completing the form on May 23, 2006. Although it was Defendants' responsibility under 29 C.F.R. § 825.208, Defendants did not inquire further. Defendants did not request a subsequent recertification from one of Megan's physicians in accordance with 29 U.S.C. § 2613(e), which would have been easy for Plaintiff to obtain. Defendants simply remained silent, misleading Plaintiff into believing she was protected by the FMLA.

16. In or about the middle of October of 2006, Mr. Dennis, Ms. O'Connor, Ms. Stern and Ms. DeRoche collectively decided to award Plaintiff a monetary spot bonus and public recognition for lending solid support on a project.

17. On November 9, 2006, an AXA employee ran a report to check how many days Plaintiff had been absent during 2006. The report revealed 40 absences since Plaintiff had

requested a reduced leave schedule on May 23, 2006. None of the 40 absences, however, had been marked as FMLA-qualifying. *See Absence Report (Run Date 11/09/2006), a copy of which is annexed hereto as Exhibit C.*

18. On November 20, 2006, an AXA employee ran a report to check how many days Plaintiff had been absent during 2006. The report revealed 41 absences since Plaintiff had requested a reduced leave schedule on May 23, 2006. None of the 41 absences, however, had been marked as FMLA-qualifying. *See Absence Report (Run Date 11/20/2006), a copy of which is annexed hereto as Exhibit D.*

19. On November 20, 2006, Ms. O'Connor emailed Ms. Stern about Plaintiff, "Did she ever update the FMLA form?" *See Email Correspondence (Dated 11/20/2006), a copy of which is annexed hereto as Exhibit E.* Therefore, Defendants were aware there was an issue involving Plaintiff and the FMLA.

20. On or about November 27, 2006, Ms. O'Connor and Ms. Stern met with Plaintiff and told Plaintiff that her rate of absenteeism was unacceptable. Plaintiff again explained it was due to her daughter's condition.

21. Sometime before December 13, 2006, Defendants began discussing the possibility of terminating Plaintiff, and Ms. O'Connor and Ms. DeRoche had a telephone conversation about whether Plaintiff's case was really a job elimination or not.

22. Shortly after the conversation, Ms. O'Connor emailed to Ms. DeRoche, Mr. Dennis and Ms. Stern a description of the new position that would supposedly replace Plaintiff's position. In response, Ms. Stern asked for a description of Plaintiff's position. Upon information and belief, Ms. Stern wanted to make sure that the description of the new position

6

was different enough from the description of Plaintiff's position so that it would actually appear that Plaintiff's position was being eliminated, which was not the case.

23. On December 14, 2006, Plaintiff submitted to AXA a Request for Family Medical Leave and Certification of Health Care Provider. *See Request for Family Medical Leave (Dated 12/14/2006), a copy of which is annexed hereto as Exhibit F.*

24. After receiving the form, however, although it was Defendants' responsibility under 29 C.F.R. § 825.208, Defendants did not designate the leave requested as FMLA-qualifying and give notice of the designation to Plaintiff. Defendants also did not dispute the leave as FMLA-qualifying and have documented discussions with Plaintiff. Defendants simply remained silent and did not inquire further, misleading Plaintiff into believing she was protected by the FMLA.

25. On December 20, 2006, Mr. Dennis prepared a document regarding the decision to supposedly "eliminate" Plaintiff's position, giving only one reason for the "elimination." Allegedly, Plaintiff's position was established to halt sales in Mississippi, and the position was being eliminated because the Mississippi project was complete. *See December 2006 Reorganization: Justification Document (Dated 12/20/06), a copy of which is annexed hereto as Exhibit G.* Plaintiff, however, had not received any assignments relating to Mississippi since at least 2004.

26. On January 1, 2007, new procedures went into effect at AXA regarding employees' requests for leave under the FMLA. Specifically, requests were to go through Metropolitan Life Insurance Company. Although it was Defendants' responsibility, Defendants did not inform Plaintiff of the new FMLA procedures.

7

27. In January of 2007, AXA's Human Resources department questioned Plaintiff about her absences during December of 2006. Plaintiff reminded AXA that she had completed certain forms. Nonetheless, Defendants did not designate the leave requested as FMLA-qualifying and give notice of the designation to Plaintiff. Defendants also did not dispute the leave as FMLA-qualifying and have documented discussions with Plaintiff. Defendants simply remained silent and did not inquire further, misleading Plaintiff into believing she was protected by the FMLA.

28. On January 31, 2007, Plaintiff had 54 absences since she had requested a reduced leave schedule on May 23, 2006. None of the 54 absences, however, had been marked as FMLA-qualifying.

29. On January 31, 2007, AXA notified Plaintiff that her job was eliminated.

## AS AND FOR A FIRST CAUSE OF ACTION

### Substantive Violations of the FMLA

30. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 30 above with the same force and effect as if fully set forth herein.

31. Defendants refused to grant Plaintiff's requests for leave to care for Megan, who has a "serious health condition."

32. Megan's condition qualifies as a "serious health condition" in that it involves inpatient hospitalization and/or continuing treatment.

33. Some or all of the absences that Plaintiff took during the time period relevant hereto were due to a circumstance permitted under the FMLA.

8

34. Defendants, using the guise of eliminating Plaintiff's position, discriminated against and terminated Plaintiff because of those absences.

35. Despite reasonable efforts, Plaintiff has been unable to find comparable employment with comparable benefits.

36. As a proximate result of Defendants' violations of the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

37. As a further proximate result of Defendants' violations of the FMLA, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendants.

38. As a further proximate result of Defendants' violations of the FMLA, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

39. By reason of Defendants' willful violations of the FMLA, Plaintiff is entitled to all legal and equitable remedies available.

### AS AND FOR A SECOND CAUSE OF ACTION
### Retaliatory Discharge in Violation of the FMLA

40. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 40 above with the same force and effect as if fully set forth herein.

41. Defendants, using the guise of eliminating Plaintiff's position, discriminated against and terminated Plaintiff because Plaintiff requested FMLA-qualifying leave.

42. Despite reasonable efforts, Plaintiff has been unable to find comparable

9

employment with comparable benefits.

43. As a proximate result of Defendants' violations of the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

44. As a further proximate result of Defendants' violations of the FMLA, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendants.

45. As a further proximate result of Defendants' violations of the FMLA, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

46. By reason of Defendants' willful violations of the FMLA, Plaintiff is entitled to all legal and equitable remedies available.

## AS AND FOR A THIRD CAUSE OF ACTION

### Violations of NYC Human Rights Law

47. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 42 above with the same force and effect as if fully set forth herein.

48. Defendants, using the guise of eliminating Plaintiff's position, discriminated against and terminated Plaintiff because Plaintiff has a daughter with a "disability."

49. Plaintiff's daughter qualifies as having a "disability" because she has a physical or medical impairment of the respiratory or speech organs.

50. Despite reasonable efforts, Plaintiff has been unable to find comparable employment with comparable benefits.

10

51. As a proximate result of Defendants' violations of NYC Human Rights Law, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

52. As a further proximate result of Defendants' violations of NYC Human Rights Law, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendants.

53. As a further proximate result of Defendants' violations of NYC Human Rights Law, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

54. By reason of Defendants' willful violations of NYC Human Rights Law, Plaintiff is entitled to all legal and equitable remedies available, including, but not limited to, punitive damages, costs and fees.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

55. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 50 above with the same force and effect as if fully set forth herein.

56. Defendants, by denying Plaintiff her rights, intentionally inflicted emotional distress upon Plaintiff.

57. Defendants' intentional conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

58. Despite reasonable efforts, Plaintiff has been unable to find comparable employment with comparable benefits.

59. As a proximate result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

60. As a further proximate result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by AXA.

61. As a further proximate result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

62. By reason of Defendants' intentional infliction of emotional distress, Plaintiff is entitled to all legal and equitable remedies available.

## **PRAYER FOR RELIEF**

Plaintiff prays that this Court grant judgment to her containing the following relief:

A.     Back pay;

B.     Actual monetary damages;

C.     Liquidated damages;

D.     Compensatory damages;

12

E.      Punitive damages;

F.      Attorneys fees;

G.      Costs and disbursements;

H.      Pre-judgment and Post-judgment interest; and

I.      And any other such relief that this Court deems fair and just.

Respectfully submitted this __ day of May, 2008.

THE ROTH LAW FIRM, PLLC

By:_____
        Betsy K. Silverstine (BKS 1015)

545 Fifth Avenue, Suite 960
New York, New York, 10017
(212) 542-8882

*Attorneys for Plaintiff*
*Lizabeth J. Augustine*

**EXHIBIT**

**A**

THU 13:13 FAX 2127071815                    RDC                                    ☑002

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

(When completed, this form goes to the employee, *not to the Department of Labor.*)

1. Employee's Name

   Lizabeth J. Augustine                    2. Patient's Name (if different from employee)    OMB No.: 1215-0181
                                            Megan A. McEvoy                                   Expires: 08/30/02.

3. Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition¹ qualify under any of the categories described? If so, please check the applicable category.

   (1) _____   (2) _____   (3) _____   (4) ✓   (5) ✓   (6) _____   , or None of the above _____

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

   Megan has recurrent respiratory papillomatosis involving the laynx + trachea which recurs monthly + obstructs her airway. She is getting special medical treatments q month + is currently traveling to Denver, Co for this

   State the approximate date the condition commenced, and the probable duration of the patient's present incapacity² if different):

   4 mos q age , possibly until puberty ~ adulthood

   b. Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in Item 6 below)?

   yes

   If yes, give the probable duration:    Until disease abates

   c. If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated² and the likely duration and frequency of episodes of incapacity²:

   No incapacitation but needs close airway monitoring + parents need to accompany her for treatments

Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

²"Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Form WH-380
Revised December 1996

☒ 003

6.  a.  If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

*Possibly 12 per yer for next 10 - 20 years*

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number of and interval between such treatments; actual or estimated dates of treatment if known, and period required for recovery if any:

*Mother may need 3-4 days off around each treatment*

b.  If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments:

*Dr. Nigel Pashley, Denver C. Pediatric otolaryngologist*

c.  If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

*[illegible handwriting] trips to operating room [illegible] of lesions*

7.  a.  If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

*N/A*

b.  If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

*N/A*

c.  If neither a. nor b. applies, is it necessary for the employee to be absent from work for treatment?

*N/A*

RDO

8. a. If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

All of the above

b. If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

yes

c. If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

pt needs care around each treatment
for 3-7 days

_____
Signature of Health Care Provider

Address   3959 Broadway, Rm 501 N
          NY NY 10032

Type of Practice   Pediatric
                   Otolaryngology

Telephone Number   212-305-8933

Date   12/23/02

---

To be completed by the employee needing family leave to care for a family member:

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

Employee Signature _____

Date _____

Page 3 of 4

A "Serious Health Condition" means an illness, injury impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

Inpatient care (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

(a) A period of incapacity[2] of more than three consecutive calendar days (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

(1) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

(2) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment[4] under the supervision of the health care provider.

3. Pregnancy

Any period of incapacity due to pregnancy, or for prenatal care.

4. Chronic Conditions Requiring Treatments

A chronic condition which:

(1) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity[2] (*e.g.*, asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

A period of incapacity[2] which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

---

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

**Public Burden Statement**

We estimate that it will take an average of 10 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.



**Flexible Work Arrangement Summary**
**Non-Sales Positions**
**Highlights as of Today's date**

Today's Date: _5/23/06_          EMC Member: _____

Employee Name: _Lizabeth Augistine_     Department: _Marketing_

Manager Name: _Jeanne O'Conner_

For the purposes of this document, a flexible work arrangement is any agreement that allows an employee to work in a manner that departs from the traditional core hours of 9 – 5 p.m., five days a week in a designated AXA Equitable office location.

Flexible Work Arrangement (Check all that apply)

_____ 1. Part-time or Reduced Work Week (scheduled to work less then 36.25 hours per week)

2. Staggered Hours:
_____ a. Late starting time: after 9 a.m./Part-time (scheduled to work less than 36.25 hours per week)

_____ b. Late starting time/Full-time: arrives after 9 am and is scheduled to depart later than core hours (scheduled to work at least 36.25 hours per week)

_____ c. Early starting time/Full-time: arrives before 9 am and is scheduled to depart earlier than core hours (scheduled to work at least 36.25 hours per week)

_____ d. Early starting time/Part-time: arrives before 9 am and is scheduled to depart earlier than core hours (scheduled to work less than 36.25 hours per week)

__X__ 3. Floating Hours: Employees that are scheduled to work 8 hours a day but are given flexibility to arrive at work after 9 am and make up their hours at the end of the traditional work day.

__X__ 4. Telecommuting: (Certain days employee is scheduled to work out of the office)

_____ 5. Condensed work week (scheduled to work at least 36.25 hours per week in less than 5 work days)

_____ 6. Job Sharing: an individual who is working part-time and sharing a full-time position with another part-time employee

_____ 7. Other: Please explain any arrangement other than those noted above.
_Due to my 6year old daughter's health maintenance_
_I arrive after 9 and leave at 4:15 – work is done_
_commuting/evenings/weekends – whatever is required_

Please indicate whether the above arrangement is in writing. YES_____ NO _____

Please indicate the approximate date that this arrangement was agreed upon. _11/2003_

Please indicate whether the above individual is on a Transitional Leave (leave following a FMLA or Disability leave)
YES_____ NO _____

Please indicate whether the above arrangement is expected to be a temporary arrangement. YES_____ NO _X_
If yes, please indicate for how long. _____

*The above is a summary and is not intended to fully detail the arrangements. Arrangements are subject to change at any time, at management's discretion.*

Confidential

AXA/LA000539

EXHIBIT

C

Report ID:  AXHRR017

AXA Financial
Human Resource Administration

Absence Report by Employee for 1/1/2006 to 11/09/2006

Page No.  1
Run Date 11/09/2006
Run Time 11:21:27

Name:            AUGUSTINE,LIZABETH J
Employee ID:     E05107

Organization:    41100
Description:     Leads Generation

PTO at the Beginning of the Year:        2.40
PTO Accrued:                            22.00
PTO Used:                               27.50
PTO Unapproved:                          0.00
PTO Adjusted:                            0.00

Accrual Rate:                            2.00

Current Balance                          3.10-

| Effective Date | Absence Code | Absence Description |
|---|---|---|
| 01/04/2006 | 33 | Worked from Home |
| 01/11/2006 | 33 | Worked from Home |
| 01/13/2006 | 13 | Half Day PTO |
| 01/17/2006 | 13 | Half Day PTO |
| 01/18/2006 | 01 | Sick |
| 01/30/2006 | 05 | PTO Day |
| 02/01/2006 | 33 | Worked from Home |
| 02/03/2006 | 05 | PTO Day |
| 02/08/2006 | 33 | Worked from Home |
| 02/15/2006 | 33 | Worked from Home |
| 02/16/2006 | 13 | Half Day PTO |
| 02/21/2006 | 01 | Sick |
| 03/01/2006 | 33 | Worked from Home |
| 03/08/2006 | 33 | Worked from Home |
| 03/15/2006 | 33 | Worked from Home |
| 03/22/2006 | 33 | Worked from Home |
| 03/23/2006 | 05 | PTO Day |
| 03/24/2006 | 05 | PTO Day |
| 03/27/2006 | 05 | PTO Day |
| 03/28/2006 | 05 | PTO Day |
| 03/29/2006 | 05 | PTO Day |
| 03/30/2006 | 05 | PTO Day |
| 03/31/2006 | 05 | PTO Day |
| 04/03/2006 | 01 | Sick |
| 04/05/2006 | 33 | Worked from Home |
| 04/07/2006 | 01 | Sick |
| 04/12/2006 | 33 | Worked from Home |
| 04/20/2006 | 33 | Worked from Home |
| 04/26/2006 | 33 | Worked from Home |
| 05/12/2006 | 33 | Worked from Home |
| 05/15/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/16/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/17/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/18/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/19/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/25/2006 | 33 | Worked from Home |
| 06/01/2006 | 33 | Worked from Home |
| 06/08/2006 | 33 | Worked from Home |
| 06/09/2006 | 05 | PTO Day |
| 06/12/2006 | 05 | PTO Day |
| 06/13/2006 | 05 | PTO Day |
| 06/14/2006 | 05 | PTO Day |
| 06/15/2006 | 05 | PTO Day |
| 06/20/2006 | 05 | PTO Day |
| 06/21/2006 | 05 | PTO Day |
| 06/23/2006 | 13 | Half Day PTO |
| 06/29/2006 | 33 | Worked from Home |
| 07/06/2006 | 33 | Worked from Home |
| 07/07/2006 | 33 | Worked from Home |
| 07/13/2006 | 33 | Worked from Home |
| 07/20/2006 | 33 | Worked from Home |
| 07/27/2006 | 33 | Worked from Home |

Confidential

AXA/LA000643

Report ID:  AXHRR017

AXA Financial
Human Resource Administration

Absence Report by Employee for 1/1/2006 to 11/09/2006

Page No.  2
Run Date 12/09/2006
Run Time 11:21:27

| Effective Date | Absence Code | Absence Description |
|---|---|---|
| 08/03/2006 | 33 | Worked from Home |
| 08/10/2006 | 33 | Worked from Home |
| 08/18/2006 | 33 | Worked from Home |
| 08/22/2006 | 13 | Half Day PTO |
| 08/25/2006 | 33 | Worked from Home |
| 08/28/2006 | 05 | PTO Day |
| 08/29/2006 | 05 | PTO Day |
| 08/30/2006 | 05 | PTO Day |
| 08/31/2006 | 05 | PTO Day |
| 09/01/2006 | 05 | PTO Day |
| 09/05/2006 | 05 | PTO Day |
| 09/06/2006 | 33 | Worked from Home |
| 09/12/2006 | 33 | Worked from Home |
| 09/19/2006 | 33 | Worked from Home |
| 09/26/2006 | 33 | Worked from Home |
| 10/03/2006 | 33 | Worked from Home |
| 10/10/2006 | 13 | Half Day PTO |
| 10/13/2006 | 13 | Half Day PTO |
| 10/17/2006 | 33 | Worked from Home |
| 10/24/2006 | 33 | Worked from Home |
| 10/31/2006 | 05 | PTO Day |
| 11/07/2006 | 05 | PTO Day |

AXA/LA000644

EXHIBIT

D

Report ID:  AXHRR017

AXA Financial
Human Resource Administration

Absence Report by Employee for 1/1/2006 to 11/20/2006

Page No.  1
Run Date 11/20/2006
Run Time 11:33:30

Name:              AUGUSTINE, LIZABETH J
Employee ID:       E05107

Organization:      41100
Description:       Leads Generation

| | | |
|---|---|---|
| PTO at the beginning of the Year: | 2.40 | Accrual Rate:            2.00 |
| PTO Accrued: | 22.60 | |
| PTO Used: | 29.50 | |
| PTO Unapproved: | 0.00 | |
| PTO Adjusted: | 0.00 | |
| Current Balance | 5.10- | |

| Effective Date | Absence Code | Absence Description |
|---|---|---|
| 01/04/2006 | 33 | Worked from Home |
| 01/11/2006 | 33 | Worked from Home |
| 01/13/2006 | 13 | Half Day PTO |
| 01/17/2006 | 13 | Half Day PTO |
| 01/18/2006 | 01 | Sick |
| 01/30/2006 | 05 | PTO Day |
| 02/01/2006 | 33 | Worked from Home |
| 02/03/2006 | 05 | PTO Day |
| 02/08/2006 | 33 | Worked from Home |
| 02/15/2006 | 33 | Worked from Home |
| 02/16/2006 | 13 | Half Day PTO |
| 02/21/2006 | 01 | Sick |
| 03/01/2006 | 33 | Worked from Home |
| 03/08/2006 | 33 | Worked from Home |
| 03/15/2006 | 33 | Worked from Home |
| 03/22/2006 | 33 | Worked from Home |
| 03/23/2006 | 05 | PTO Day |
| 03/24/2006 | 05 | PTO Day |
| 03/27/2006 | 05 | PTO Day |
| 03/28/2006 | 05 | PTO Day |
| 03/29/2006 | 05 | PTO Day |
| 03/30/2006 | 05 | PTO Day |
| 03/31/2006 | 05 | PTO Day |
| 04/03/2006 | 01 | Sick |
| 04/05/2006 | 33 | Worked from Home |
| 04/07/2006 | 01 | Sick |
| 04/12/2006 | 33 | Worked from Home |
| 04/20/2006 | 33 | Worked from Home |
| 04/26/2006 | 33 | Worked from Home |
| 05/12/2006 | 33 | Worked from Home |
| 05/15/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/16/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/17/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/18/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/19/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/25/2006 | 33 | Worked from Home |
| 06/01/2006 | 33 | Worked from Home |
| 06/08/2006 | 33 | Worked from Home |
| 06/09/2006 | 05 | PTO Day |
| 06/12/2006 | 05 | PTO Day |
| 06/13/2006 | 05 | PTO Day |
| 06/14/2006 | 05 | PTO Day |
| 06/15/2006 | 05 | PTO Day |
| 06/20/2006 | 05 | PTO Day |
| 06/21/2006 | 05 | PTO Day |
| 06/23/2006 | 13 | Half Day PTO |
| 06/29/2006 | 33 | Worked from Home |
| 07/06/2006 | 33 | Worked from Home |
| 07/07/2006 | 33 | Worked from Home |
| 07/13/2006 | 33 | Worked from Home |
| 07/20/2006 | 33 | Worked from Home |
| 07/27/2006 | 33 | Worked from Home |

AXA/LA000645

AXA Financial
Report ID: AXHRR017                      Human Resource Administration                    Page No.  2
                                                                                          Run Date 11/20/2006
                          Absence Report by Employee for 1/1/2006 to 11/20/2006           Run Time 11:33:39

| Effective Date | Absence Code | Absence Description |
|---|---|---|
| 08/03/2006 | 33 | Worked from Home |
| 08/10/2006 | 33 | Worked from Home |
| 08/18/2006 | 33 | Worked from Home |
| 08/22/2006 | 13 | Half Day PTO |
| 08/25/2006 | 33 | Worked from Home |
| 08/28/2006 | 05 | PTO Day |
| 08/29/2006 | 05 | PTO Day |
| 08/30/2006 | 05 | PTO Day |
| 08/31/2006 | 05 | PTO Day |
| 09/01/2006 | 05 | PTO Day |
| 09/05/2006 | 05 | PTO Day |
| 09/06/2006 | 33 | Worked from Home |
| 09/12/2006 | 33 | Worked from Home |
| 09/19/2006 | 33 | Worked from Home |
| 09/26/2006 | 33 | Worked from Home |
| 10/03/2006 | 33 | Worked from Home |
| 10/10/2006 | 13 | Half Day PTO |
| 10/13/2006 | 13 | Half Day PTO |
| 10/17/2006 | 33 | Worked from Home |
| 10/24/2006 | 33 | Worked from Home |
| 10/31/2006 | 05 | PTO Day |
| 11/06/2006 | 05 | PTO Day |
| 11/07/2006 | 05 | PTO Day |
| 11/10/2006 | 05 | PTO Day |

Confidential

AXA/LA000646

\

**EXHIBIT**

*E*

From: Jeanne O'Connor
Sent: Monday, November 20, 2006 2:25:43 PM
To: Cynthia D Stern
Subject: Re: Borrowing PTO Days

Cinday:
Did she ever update the FMLA form?
Jeanne O'Connor
VP, Customer Acquisition, Cross-Sales & Retention
Customer Marketing Group
AXA Equitable/1290 Ave. of the Americas, 7th fl./New York, NY 10104
Phone: (212) 314-2955/Fax: (212) 707-7775
jeanne_o'connor@mony.com


            Cynthia D Stern
            11/20/2006 12:09 PM
                        To: Jeanne O'Connor/Distribution Communication/MONY@AXA-EQUITABLE
                        cc:
                        Subject: Re: Borrowing PTO Days


They are borrowed against the next year's PTO days.


Cindy Stern
Customer Retention & Cross-Sales
Customer Marketing Group
AXA Equitable
1290 Ave. of the Americas, 7th Floor
New York, NY 10104

Phone: 212-314-2906
Fax: 212-707-7478

-----Jeanne O'Connor/Distribution Communication/MONY wrote: -----

To: Cynthia D Stern/NY/AXA-Financial/Equitable@AXA-Equitable
From: Jeanne O'Connor/Distribution Communication/MONY
Date: 11/17/2006 01:28PM
Subject: Re: Borrowing PTO Days

So are borrowed days unpaid or borrowed against the following year?
Jeanne O'Connor
VP, Customer Acquisition, Cross-Sales & Retention
Customer Marketing Group
AXA Equitable/1290 Ave. of the Americas, 7th fl./New York, NY 10104
Phone: (212) 314-2955/Fax: (212) 707-7775
jeanne_o'connor@mony.com
Cynthia D Stern


            Cynthia D Stern
            11/16/2006 05:21 PM

      To:      Jeanne O'Connor
      cc:
      Subject:    Borrowing PTO Days

According to the Management Guide:
Employees with at least one year of service and satisfactory performance may
borrow PTO up to 5 times the monthly PTO accrual (10 days). Borrowing PTO
requires the employee's written request and written approval by the
employee's manager.

Confidential                                                      AXA/LA002088



**EXHIBIT F**



### REQUEST FOR FAMILY MEDICAL LEAVE, PERSONAL LEAVE OR EXTENDED LEAVE
This leave is designated as leave granted pursuant to the Family and Medical Leave Act (FMLA)

Name: _Lizbeth Augustine_    Emp ID: _505107_

Department: _Customer Marketing Group_

Manager: _Cynthia Stern_    Telephone: _212 314- 2906_

Type of Leave (Disability, Family Medical Leave, Personal Leave of Absence): _Family Leave_

Paid Time Off (Accrued and Unused) to be used ___0___ Days

Last Day Worked: _____

**Duration of Leave of Absence**

Sick Days                                    Start _____ End _____

Short Term Disability (STD)                  Start _____ End _____

Paid Time Off (PTO Days)*                     Start _____ End _____
*Must be approved by your Manager*

Unpaid Family Medical Leave of Absence *      Start _____ End _____
*Must be approved by your Manager for Leaves greater than 12 weeks (including paid sick days, STD and PTO days)*

Intermittent Family Medical Leave            Start _12/21/06_ End _4/15/07_
*Pending medical certification if applicable*   Weekly Schedule: _3 d 4 week in office_
_2 days at home_

Transition-Time/Medical Reduced Schedule*     Start _____ End _____
*Must be approved by your Manager*            Weekly Schedule: _____

Personal Leave of Absence**                   Start _____ End _____
*Must be approved by your Manager and Sr. Vice President*

**Expected Full Time Return to Work Date** _____

*  Approved by Manager: _____    Date: _____

** Approved by Sr. Vice President: _____    Date: _____

### GROUP INSURANCE BENEFIT ELECTION DURING LEAVE OF ABSENCE

_✓_ I elect to continue          my Group Insurance coverages in force prior to my leave of absence, with the
exception of Disability Pay Plans, and I agree to pay the necessary monthly
contribution required by this Election. I understand that these contributions are due
and payable no later than the last day of the month in which they are due. If this
amount is not paid by such date, my Group Insurance coverages will terminate.

_____ I elect NOT to continue    my Group Insurance coverages during my leave of absence.

Signature _Augustine_    Date: _12/14/06_

Home Address _9 Painted Wagon Rd_    _Holmdel_    _NJ_    _07733_
Number and Street Address    City or Town    State    Zip Code

12/15/05

Return Form to:    AXA Financial
                   Corporate Benefits
                   100 Madison Street, MD 33-3
                   Syracuse, NY 13202
                   FAX: 315-477-3364

Confidential                                                          AXA/LA000542

12/13/2006 WED 14:05 FAX 2123142199          1MCG

**Certification of Health Care Provider**
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



*(When completed, this form goes to the employee, **Not to the Department of Labor**.)*

OMB No.: 1215-0181
Expires:    07/31/07

1. Employee's Name

LIZ AUGUSTINE

2. Patient's Name *(if different from employee)*

MEGAN McEVOY

3. Page 4 describes what is meant by a "**serious health condition**" under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1) _____   (2) _____   (3) _____   (4) ✓   (5) _____   (6) ✓ , or None of the above _____

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

Six year old with history of juvenile recurrent laryngeal papillomatosis requiring tracheostomy, recent airway surgery. No longer has tracheostomy but has long term airway and lung damage as a result of condition and treatment

5. a. State the approximate **date the condition commenced**, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

Commenced 7/00

duration - 5 yrs

b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

yes

If yes, give the probable duration:   5 yrs

c. If the condition is a **chronic condition** (condition #4) or pregnancy, state whether the patient is presently **incapacitated**[2] and the likely duration and frequency of **episodes of incapacity**[2]:

Chronic condition

---

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Form WH-380
Revised December 1998

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

*Cannot be predicted*

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

b. If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments:

*Patient sees a specialist in pulmonary medicine and a pediatric ENT specialist*

c. If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

*Albuterol inhalation, oxygen as needed antibiotics as needed*

7. a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c. If neither a. nor b. applies, is it necessary for the employee to be absent from work for treatment?

8. a. If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

   b. If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

   c. If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

---

Signature of Health Care Provider

**UPTOWN PEDIATRICS**
Ramon J.C. Murphy, MD
John G. Larsen, MD   Signe Larsen, MD
Beth Cohen, MD   Daniel Camerman, MD
Ivanya L. Alpert, MD
1245 Park Avenue
New York, NY 10128
Tel: 212-427-0540   Fax: 212-534-1086

Type of Practice

Address

Telephone Number

Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

Employee Signature                                           Date

A "**Serious Health Condition**" means an illness, injury impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

   Inpatient care (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

   (a) A period of incapacity[2] of **more than three consecutive calendar days** (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

      (1) Treatment[3] **two or more times** by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

      (2) Treatment by a health care provider on **at least one occasion** which results in a regimen of **continuing treatment**[4] under the supervision of the health care provider.

3. Pregnancy

   Any period of incapacity due to **pregnancy**, or for **prenatal care.**

4. Chronic Conditions Requiring Treatments

   A **chronic condition** which:

      (1) Requires **periodic visits** for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

      (2) Continues over an **extended period of time** (including recurring episodes of a single underlying condition); and

      (3) May cause episodic rather than a continuing period of incapacity[2] (*e.g.*, asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

   A period of incapacity[2] which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

   Any period of absence to receive **multiple treatments** (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for **restorative surgery** after an accident or other injury, **or** for a condition that **would likely result in a period of incapacity**[2] **of more than three consecutive calendar days in the absence of medical intervention or treatment,** such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

---

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

**Public Burden Statement**

We estimate that it will take an average of 20 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.**



EXHIBIT
G

## Customer Marketing Group (12/20/06)
## December 2006 Reorganization: Justification Document

### Background

The fundamental basis for the Customer Marketing Group's (CMG) current organization structure (Exhibit 1) was establishment of the group's business mission (drive New Business Value/NBV via customer-based marketing programs, executed in cooperation with and on the behalf of AXA Equitable's Retail and Wholesale/ADL business channels), by virtue of the Executive Management Council's approval of the 2006 – 2007 Marketing Plan in May 2006. The CMG organization was officially established at that time with reorganization at the VP and above levels, including installation of new leadership.

Accountabilities of the new leadership included identifying future changes to increase CMG's NBV productivity and efficiency in 2006 and beyond. The CMG structure below the VP levels in Exhibit 1 also reflects the immediate changes accomplished between May and July, 2006. The discussion below details the changes that CMG has anticipated and been working towards since Third Quarter 2006.

### New Requirements for Change

Four fundamental realities now substantiate the need for further change in the CMG organization structure to achieve necessary alignments that deliver its business mission. Those realities, each of which is associated with higher volume and increased performance of CMG programs, are:

. The December 2006 completion of the Marketing Infrastructure RFP and establishment of a February 1, 2007 'go live' date for automated Print on Demand and Lead Management capabilities. This will increase CMG's scale and volume capacities to execute and evaluate acquisition, retention and cross-sales marketing programs.
. The emergence of a business and resource allocation strategy for the Retail Channel. This will establish a more actionable and rational basis for investments, including marketing investments, down to the branch office level of the Retail organization.
. The beginning of a similar movement toward strategic clarity and specificity on the ADL side of the business. This effort is expected to be completed by February 1.
. The establishment of a more effective working partnership between CMG and Finance, with the particular benefit of a more actionable and transparent application of NBV principles, calculations and tracking. This will provide an enhanced basis for evaluating NBV potential of alternative marketing programs, as well portions of marketing programs.

## Summary of CMG Changes

The consistent themes for all December 2006 changes to the CMG organization are 1) the reconfiguration of positions and skills to more effectively drive NBV, 2) the elimination of positions that were previously focused on non-NBV efforts and/or efforts that no longer hold a strategic business priority for the company and 3) the shifting of resources to positions that directly support increased strategic effectiveness of marketing programs. Each of the changes is noted below, with further details in the attached position descriptions and Exhibits 1 and 2 organization charts.

### Direct Reports to SVP, CMG

1. The two VP/AVP Wholesale Acquisition and AXA Advisor positions (Exhibit 1) are reconfigured to VP/AVP Marketing Development (Exhibit 2). The new position description (Exhibit 3) details the new focus on acquiring and assisting the development of ADL/Retail strategy, then developing supportive CMG strategy that drives CMG program activity. These positions more effectively become the ADL/Retail client business representative in CMG. The positions also manage all the communications flow between CMG and the respective client businesses. To accommodate this new focus, activities such as non-NBV event support and significant amounts of brochure development have been released to other organizations (acceptance pending). The two incumbents are assessed as having the necessary skills/qualifications to remain in place and in grade.

2. The VP Advertising, Brand/Acquisition & Diversity position (Exhibit 1) is reconfigured to VP Advertising & Brand (Exhibit 2). The new position description (Exhibit 4) reflects an increased focus on the strategic importance of advertising at both the Group (Paris) and company (US) levels, as well as recognizing the significant involvement of senior management (EVP/SVP) in this highly visible and heavily funded endeavor. In addition, the new focus removes acquisition activities (shifted to ARCS) and moves diversity advertising to the lower priority (and lower position), consistent with its business impact and funding. The incumbent is assessed as having the necessary skills/qualifications to remain in place.

### Organizations Reporting to CMG VP's/AVP

3. Marketing Development (Retail): This organization is reduced from five associates to four, reflecting elimination of the AVP position that supported off-site events and the passing of those activities to the Retail and ADL organizations. Paul Donlon, AVP occupies this eliminated position but has accepted another position within AXA Equitable starting 1-1-07. Additionally, the remaining positions have been refocused to assist the VP's mission of more strategically driving the marketing support of the Retail organization. See Exhibits marked 'Retail 3a, 3b and 3c' for details. The incumbents in these remaining positions are assessed as having the necessary skills/qualifications to remain in place.

4. Marketing Development (ADL): This organization will shift one of its three reports (Exhibit 1) to ADL ARCS. The ADL ARCS organization will be formed

as a new sub-entity under the AVP, Marketing Development (ADL) during its development phase (estimated Jan. – June '07), then shifted to the VP ARCS when first half 2007 programs have been successfully launched and the ARCS organization has scaled the marketing infrastructure's learning curve (Exhibit 2). The two Marketing Development positions reporting to the AVP, Marketing Development ADL (see Exhibits: ADL 3D & 3E) will be configured similarly to their counterparts in the Marketing Development (Retail) organization, adjusted only for detail differences between Retail and ADL. All positions will require on-site presence, consistent with the needs of supporting ADL. All incumbents are assessed as having the necessary skills/qualifications to remain in Marketing Development or move to the ADL ARCS sub-unit. However, one associate (Joanne Bailey) does not meet the requirement to be on-site. She is not expected to relocate from her off-site location and will therefore be replaced. The Director, ADL ARCS and the three positions under it are new to the organization and reflect the increased importance of supporting ADL's growth with strategic marketing programs, consistent with the support historically given to Retail. These positions require direct marketing skills and experience not resident at any scale within the company. These will be external acquisitions, funded by elimination of positions inconsistent with CMG's new mission/priorities and/or shifting of FTE's (See Exhibit 1 where position eliminations are in yellow and shifts are outlined in light blue).

5. Advertising & Brand: The position of AVP, Diversity Advertising will be eliminated and its responsibilities transferred to the remaining lower level advertising positions, consistent with the lower business impact and funding of diversity programs. The impacted incumbent is Stella Stots, who is assessed as too senior for the remaining two positions. The other two Advertising incumbents are assessed as having the necessary skills/qualifications to remain in place.

6. Acquisition, Retention & Cross-Sales: The position of Client Relationship Manager was established in 2002 to support the corporate initiative to halt sales in Mississippi. An important part of that effort was to ensure effective service to existing clients in that state. The Client Relationship Manager accomplished that.. Now that AXA Equitable has returned to marketing in the state and CMG has been charged with the new task of driving NBV through customer-based marketing support of our field operations, the Client Relationship Manager position will be eliminated and replaced by a Junior Campaign Manager position (Exhibit 5). The incumbent, Liz Augustine, does not have the direct marketing skills that will be required going forward in the ARCS organization, including those of the replacement position.

All positions under the VP, Marketing Operations will remain unchanged at this time.

Signed: _____
James Dennis
SVP, Customer Marketing Group