# DECLARATION OF

# DOROTHY ROSENSWEIG, ESQ.

# EXHIBIT M

| From: | Betsy Silverstine [Betsy@rrothlaw.com] |
|---|---|
| Sent: | Friday, April 18, 2008 4:05 PM |
| To: | Dorothy Rosensweig |
| Cc: | Anna A. Cohen |
| Subject: | augustine v. axa |
| Attachments: | unexecuted.1st.amended.complaint.4.18.08.pdf |

Dear Dotty:

Please find attached a copy of Plaintiff's First Amended Complaint. Pursuant to Fed. R. Civ. P. 15(a), I am submitting it to you to obtain your written consent prior to filing. Please call me upon your convenience, and we can discuss which paragraphs and exhibits you believe present a problem under the confidentiality order. As you can see, the pleading is unexecuted, as it is obviously not ready to be submitted to the Court. Thank you. Enjoy the nice weather this weekend! Speak with you soon.

Sincerely,

**Betsy K. Silverstine, Esq.**
**Admitted in New York and Florida.**
The Roth Law Firm, PLLC
545 Fifth Avenue
Suite 960
New York, NY 10017
Tel: 212 542 8882
Fax: 212 542 8883

This electronic mail message contains information that (a) is or may be LEGALLY PRIVILEGED, CONFIDENTIAL, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) is intended only for the use of the Addressee(s) named herein. If you are not the intended recipient, an addressee, or the person responsible for delivering this to an addressee, you are hereby notified that reading, using, copying, or distributing any part of this message is strictly prohibited. If you have received this electronic mail message in error, please contact us immediately and take the steps necessary to delete the message completely from your computer system.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x

LIZABETH J. AUGUSTINE,                           :

                 Plaintiff,          :    Case No. 07 Civ. 8362 (RWS)(DFE)

         - against -                       :

                                   **FIRST AMENDED COMPLAINT**

AXA EQUITABLE LIFE INSURANCE         :    **JURY TRIAL DEMANDED**
COMPANY; JAMES C. DENNIS; JEANNE
O'CONNOR; CYNTHIA D. STERN; and      :
LISA A. DEROCHE,

                                  :

                 Defendants.

-------------------------------------------------- x

Plaintiff Lizabeth J. Augustine ("Plaintiff"), by and through counsel, The Roth Law Firm,

PLLC, located at 545 Fifth Avenue, Suite 960, New York, New York 10017, and as and for her

First Amended Complaint against AXA Equitable Life Insurance Company ("AXA"); James C.

Dennis ("Mr. Dennis"); Jeanne O'Connor ("Ms. O'Connor"); Cynthia Stern ("Ms. Stern"); and

Lisa DeRoche ("Ms. DeRoche") (collectively "Defendants"), states as follows:

## NATURE OF THE ACTION

This is an action under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et

seq.* ("FMLA") and New York City Human Rights Laws, §§ 8-101(1)(a) and 8-107(20) ("NYC

Human Rights Laws") to provide relief to a woman who, after twenty years of service to AXA,

was terminated by Defendants in violation of those laws. As alleged herein with more

specificity, at all relevant times, Defendants were aware of Plaintiff's daughter's medical

condition. Indeed, Plaintiff took FMLA intermittent leave twice before 2006. Although Plaintiff

again requested a reduced leave schedule in May of 2006 due to her daughter's health, none of

her absences thereafter were marked as FMLA-qualifying. Further, Plaintiff was disciplined for

those absences. In December of 2006, Plaintiff again requested a reduced leave schedule, which

was also not granted. Thereafter, in January of 2007, Plaintiff was notified that her job was eliminated. Plaintiff alleges that her termination was because of her absences, which should have been FMLA-protected, was in retaliation for requesting additional FMLA leave and was because of her daughter's condition.

## PARTIES

1. Plaintiff is a citizen of the United States, residing at 9 Painted Wagon Road, Holmdel, New Jersey 07733 and was an "eligible employee" of AXA within the meaning of the FMLA, having worked for AXA for at least 1,250 hours of service during the previous 12-month period.

2. AXA is a company authorized to do business in the State of New York, maintaining its principal office at 1290 Avenue of the Americas, New York, New York 10104 ("principal office") and is an "employer" within the meaning of the FMLA, employing 50 or more employees.

3. Upon information and belief, Mr. Dennis is a citizen of the United States, employed by AXA in its principal office as the Senior Vice President of the Customer Marketing Group. While Plaintiff was employed by AXA, Mr. Dennis's job responsibilities related to: (i) Plaintiff's termination; (ii) supervising or controlling Plaintiff's work schedule or conditions of Plaintiff's employment; (iii) determining Plaintiff's rate and method of payment; and (iv) maintaining Plaintiff's employment records.

4. Upon information and belief, Ms. O'Connor is a citizen of the United States, employed by AXA in its principal office as the Vice President of the Acquisition, Cross-Sell & Retention Division of the Customer Marketing Group. While Plaintiff was employed by AXA,

2

Ms. O'Connor's job responsibilities related to: (i) Plaintiff's termination; (ii) supervising or controlling Plaintiff's work schedule or conditions of Plaintiff's employment; (iii) determining Plaintiff's rate and method of payment; and (iv) maintaining Plaintiff's employment records.

5.   Upon information and belief, Ms. Stern is a citizen of the United States, employed by AXA in its principal office as the Vice President of the Customer Marketing Group.  While Plaintiff was employed by AXA, Ms. O'Connor's job responsibilities related to: (i) Plaintiff's termination; (ii) supervising or controlling Plaintiff's work schedule or conditions of Plaintiff's employment; (iii) determining Plaintiff's rate and method of payment; and (iv) maintaining Plaintiff's employment records.

6.   Upon information and belief, Ms. DeRoche is a citizen of the United States, employed by AXA in its principal office as the Human Resources Relationship Manager.  While Plaintiff was employed by AXA, Ms. DeRoche's job responsibilities related to: (i) Plaintiff's termination; (ii) supervising or controlling Plaintiff's work schedule or conditions of Plaintiff's employment; (iii) determining Plaintiff's rate and method of payment; and (iv) maintaining Plaintiff's employment records.

## JURISDICTION AND VENUE

7.   This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States and in particular under the FMLA.

8.   Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because AXA resides, for the purpose of venue pursuant to 28 U.S.C. § 1391(c), in this judicial district, and because a substantial part of the events giving rise to the claims herein occurred in this

district.

9.  Section 107 of the FMLA permits Plaintiff to proceed directly in this Court without resort to, or exhaustion of, administrative remedies.

## FACTUAL BACKGROUND

10. Plaintiff worked for AXA from March 1, 1987 through March 2, 2007. Throughout those twenty years, Plaintiff loyally and competently served AXA.

11. In 2000, Plaintiff gave birth to her daughter, Megan McEvoy ("Megan"). Five months later, Megan was diagnosed with Recurrent Respiratory Papillomatosis, which is a life-threatening condition. As a result of that serious illness, to date, Megan has undergone approximately 60 surgeries and two experimental treatment protocols.

12. On or about December 27, 2002, Plaintiff submitted to AXA a form, which stated: (i) Megan's condition could continue until puberty or adulthood; (ii) Plaintiff would have to work intermittently or less than a full schedule as a result of the condition until the disease abates; (iii) possibly twelve treatments per year would be required over the next ten to twenty years; and (iv) Plaintiff may need to be absent from work three to seven days around each treatment. *See Certification of Health Care Provider (Dated 12/27/2002), a copy of which is annexed hereto as Exhibit A.* Thereafter, AXA granted Plaintiff a "reduced leave schedule" under the FMLA.

13. On or about May 23, 2006, Plaintiff submitted a form requesting a "reduced leave schedule" under the FMLA because Plaintiff requested a "leave schedule that reduces the usual number of hours per workweek, or hours per workday, of an employee." 29 U.S.C. § 2611(9).

4

Specifically, Plaintiff requested that she be allowed to arrive "after 9 and leave at 4:15." Plaintiff

further stated that the reason she needed the schedule was her "6 year old daughter's health," and

that it was not expected to be a temporary arrangement. *See Flexible Work Arrangement*

*Summary (Dated 5/23/06), a copy of which is annexed hereto as Exhibit B.*

14. After receiving the form, however, although it was Defendants' responsibility

under 29 C.F.R. § 825.208, Defendants did not designate the leave requested as FMLA-

qualifying and give notice of the designation to Plaintiff. Defendants also did not dispute the

leave as FMLA-qualifying and have documented discussions with Plaintiff. Defendants simply

remained silent, misleading Plaintiff into believing she was protected by the FMLA.

15. In June of 2006, Ms. O'Connor was aware that there was an issue involving

Plaintiff and the FMLA, because Ms. O'Connor requested that Plaintiff update a FMLA form.

Plaintiff, however, was never given a form to update. In addition, Plaintiff believed she had

taken care of the issue by completing the form on May 23, 2006. Although it was Defendants'

responsibility under 29 C.F.R. § 825.208, Defendants did not inquire further. Defendants did not

request a subsequent recertification from one of Megan's physicians in accordance with 29

U.S.C. § 2613(e), which would have been easy for Plaintiff to obtain. Defendants simply

remained silent, misleading Plaintiff into believing she was protected by the FMLA.

16. In or about the middle of October of 2006, Mr. Dennis, Ms. O'Connor, Ms. Stern

and Ms. DeRoche collectively decided to award Plaintiff a monetary spot bonus and public

recognition for lending solid support on a project.

17. On November 9, 2006, an AXA employee ran a report to check how many days

Plaintiff had been absent during 2006. The report revealed 40 absences since Plaintiff had

5

requested a reduced leave schedule on May 23, 2006. None of the 40 absences, however, had been marked as FMLA-qualifying. *See Absence Report (Run Date 11/09/2006), a copy of which is annexed hereto as Exhibit C.*

18. On November 20, 2006, an AXA employee ran a report to check how many days Plaintiff had been absent during 2006. The report revealed 41 absences since Plaintiff had requested a reduced leave schedule on May 23, 2006. None of the 41 absences, however, had been marked as FMLA-qualifying. *See Absence Report (Run Date 11/20/2006), a copy of which is annexed hereto as Exhibit D.*

19. On November 20, 2006, Ms. O'Connor emailed Ms. Stern about Plaintiff, "Did she ever update the FMLA form?" *See Email Correspondence (Dated 11/20/2006), a copy of which is annexed hereto as Exhibit E.* Therefore, Defendants were aware there was an issue involving Plaintiff and the FMLA.

20. On or about November 27, 2006, Ms. O'Connor and Ms. Stern met with Plaintiff and told Plaintiff that her rate of absenteeism was unacceptable. Plaintiff again explained it was due to her daughter's condition.

21. Sometime before December 13, 2006, Defendants began discussing the possibility of terminating Plaintiff, and Ms. O'Connor and Ms. DeRoche had a telephone conversation about whether Plaintiff's case was really a job elimination or not.

22. Shortly after the conversation, Ms. O'Connor emailed to Ms. DeRoche, Mr. Dennis and Ms. Stern a description of the new position that would supposedly replace Plaintiff's position. In response, Ms. Stern asked for a description of Plaintiff's position. Upon information and belief, Ms. Stern wanted to make sure that the description of the new position

6

was different enough from the description of Plaintiff's position so that it would actually appear that Plaintiff's position was being eliminated, which was not the case.

23. On December 14, 2006, Plaintiff submitted to AXA a Request for Family Medical Leave and Certification of Health Care Provider. *See Request for Family Medical Leave (Dated 12/14/2006), a copy of which is annexed hereto as Exhibit F.*

24. After receiving the form, however, although it was Defendants' responsibility under 29 C.F.R. § 825.208, Defendants did not designate the leave requested as FMLA-qualifying and give notice of the designation to Plaintiff. Defendants also did not dispute the leave as FMLA-qualifying and have documented discussions with Plaintiff. Defendants simply remained silent and did not inquire further, misleading Plaintiff into believing she was protected by the FMLA.

25. On December 20, 2006, Mr. Dennis prepared a document regarding the decision to supposedly "eliminate" Plaintiff's position, giving only one reason for the "elimination." Allegedly, Plaintiff's position was established to halt sales in Mississippi, and the position was being eliminated because the Mississippi project was complete. *See December 2006 Reorganization: Justification Document (Dated 12/20/06), a copy of which is annexed hereto as Exhibit G.* Plaintiff, however, had not received any assignments relating to Mississippi since at least 2004.

26. On January 1, 2007, new procedures went into effect at AXA regarding employees' requests for leave under the FMLA. Specifically, requests were to go through Metropolitan Life Insurance Company. Although it was Defendants' responsibility, Defendants did not inform Plaintiff of the new FMLA procedures.

7

27. In January of 2007, AXA's Human Resources department questioned Plaintiff about her absences during December of 2006. Plaintiff reminded AXA that she had completed certain forms. Nonetheless, Defendants did not designate the leave requested as FMLA-qualifying and give notice of the designation to Plaintiff. Defendants also did not dispute the leave as FMLA-qualifying and have documented discussions with Plaintiff. Defendants simply remained silent and did not inquire further, misleading Plaintiff into believing she was protected by the FMLA.

28. On January 31, 2007, Plaintiff had 54 absences since she had requested a reduced leave schedule on May 23, 2006. None of the 54 absences, however, had been marked as FMLA-qualifying.

29. On January 31, 2007, AXA notified Plaintiff that her job was eliminated.

## AS AND FOR A FIRST CAUSE OF ACTION

### Substantive Violations of the FMLA

30. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 30 above with the same force and effect as if fully set forth herein.

31. AXA refused to grant Plaintiff's requests for leave to care for Megan, who has a "serious health condition."

32. Megan's condition qualifies as a "serious health condition" in that it involves inpatient hospitalization and/or continuing treatment.

33. Some or all of the absences that Plaintiff took during the time period relevant hereto were due to a circumstance permitted under the FMLA.

8

34. AXA, using the guise of eliminating Plaintiff's position, discriminated against and terminated Plaintiff because of those absences.

35. Despite reasonable efforts, Plaintiff has been unable to find comparable employment with comparable benefits.

36. As a proximate result of AXA's violations of the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

37. As a further proximate result of AXA's violations of the FMLA, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by AXA.

38. As a further proximate result of AXA's violations of the FMLA, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

39. By reason of AXA's willful violations of the FMLA, Plaintiff is entitled to all legal and equitable remedies available.

## AS AND FOR A SECOND CAUSE OF ACTION

### Retaliatory Discharge in Violation of the FMLA

40. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 40 above with the same force and effect as if fully set forth herein.

41. Defendants, using the guise of eliminating Plaintiff's position, discriminated against and terminated Plaintiff because Plaintiff requested FMLA-qualifying leave.

42. Despite reasonable efforts, Plaintiff has been unable to find comparable

employment with comparable benefits.

43. As a proximate result of AXA's violations of the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

44. As a further proximate result of AXA's violations of the FMLA, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by AXA.

45. As a further proximate result of AXA's violations of the FMLA, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

46. By reason of AXA's willful violations of the FMLA, Plaintiff is entitled to all legal and equitable remedies available.

## AS AND FOR A THIRD CAUSE OF ACTION

### Violations of NYC Human Rights Law

47. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 42 above with the same force and effect as if fully set forth herein.

48. Defendants, using the guise of eliminating Plaintiff's position, discriminated against and terminated Plaintiff because Plaintiff has a daughter with a "disability."

49. Plaintiff's daughter qualifies as having a "disability" because she has a physical or medical impairment of the respiratory or speech organs.

50. Despite reasonable efforts, Plaintiff has been unable to find comparable employment with comparable benefits.

10

51. As a proximate result of AXA's violations of NYC Human Rights Law, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

52. As a further proximate result of AXA's violations of NYC Human Rights Law, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by AXA.

53. As a further proximate result of AXA's violations of NYC Human Rights Law, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

54. By reason of AXA's willful violations of NYC Human Rights Law, Plaintiff is entitled to all legal and equitable remedies available, including, but not limited to, punitive damages, costs and fees.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

55. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 50 above with the same force and effect as if fully set forth herein.

56. AXA, by denying Plaintiff her rights, intentionally inflicted emotional distress upon Plaintiff.

57. AXA's intentional conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

11

58. Despite reasonable efforts, Plaintiff has been unable to find comparable employment with comparable benefits.

59. As a proximate result of AXA's intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

60. As a further proximate result of AXA's intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by AXA.

61. As a further proximate result of AXA's intentional infliction of emotional distress, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish.

62. By reason of AXA's intentional infliction of emotional distress, Plaintiff is entitled to all legal and equitable remedies available.

## PRAYER FOR RELIEF

Plaintiff prays that this Court grant judgment to her containing the following relief:

A.     Back pay;

B.     Actual monetary damages;

C.     Liquidated damages;

D.     Compensatory damages;

12

E.    Punitive damages;

F.    Attorneys fees;

G.    Costs and disbursements;

H.    Pre-judgment and Post-judgment interest; and

I.    And any other such relief that this Court deems fair and just.

Respectfully submitted this 18 day of April, 2008.

THE ROTH LAW FIRM, PLLC

By: _____
     Betsy K. Silverstine (BKS-1015)

545 Fifth Avenue, Suite 960
New York, New York, 10017
(212) 542-8882

*Attorneys for Plaintiff*
*Lizabeth J. Augustine*

13



**EXHIBIT**

**A**

THU 13:13 FAX 212707818          BDO          ☒ 002

**Certification of Health Care Provider**
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

(When completed, this form goes to the employee, not to the Department of Labor.)

1. Employee's Name

Elizabeth J Augustine

2. Patient's Name (if different from employee)

Megan A. McEvoy

OMB No: 1215-0181
Expires:  06/30/98

3. Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition¹ qualify under any of the categories described? If so, please check the applicable category.

(1) _____ (2) _____ (3) _____ (4) ✓ (5) _____ (6) _____ , or None of the above _____

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

Megan has recurrent respiratory papillomatosis involving the larynx + trachea which recurs rapidly + obstructs her airway. She is getting special medical treatments g month + is currently traveling to Denver, Co for this

a. State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity² if different):

4 mos g age , possibly until puberty – adulthood.

b. Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in item 6 below)?

yes

If yes, give the probable duration:     Until disease abates

c. If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated² and the likely duration and frequency of episodes of incapacity².

No incapacitation but needs close airway monitoring + parents need to accompany her for treatments

¹ Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

² "Incapacity" for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Page 1 of 4

Form WH-380
Revised December 1994

@003

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

*Possibly 12 per year for next 10 - 20 years*

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

*Mother may need 3-7 days off around each treatment*

b. If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments:

*Dr. Nigel Pashley, Denver Co.*
*Pediatric otolaryngologist*

c. If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

*[illegible] trips to operating room ... [illegible] of lesions*

7. a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

*N/A*

b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

*N/A*

c. If neither a. nor b. applies, is it necessary for the employee to be absent from work for treatment?

*N/A*

Page 2 of 4

EDO

8.  a.  If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

*All of the above*

b.  If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

*yes*

c.  If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

*Pt needs care around each treatment for 3-7 days*

_____
Signature of Health Care Provider

Address  *8859 Broadway, Rm 501 N*

*NY NY 10032*

Type of Practice  *Pediatric Otolaryngology*

Telephone Number  *212-305-8493*

Date  *12/28/02*

To be completed by the employee needing family leave to care for a family member:

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____
Employee Signature

_____
Date

Page 3 of 4

A "Serious Health Condition" means an illness, injury, impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

(a) A period of incapacity[2] of more than three consecutive calendar days (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

   (1) Treatment[3] two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

   (2) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment[4] under the supervision of the health care provider.

3. Pregnancy

Any period of incapacity due to pregnancy, or for prenatal care.

4. Chronic Conditions Requiring Treatments

A chronic condition which:

   (1) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

   (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

   (3) May cause episodic rather than a continuing period of incapacity[2] (e.g., asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

A period of incapacity[2] which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

Note: Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

[2] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

**Public Burden Statement**

We estimate that it will take an average of 10 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.



**Flexible Work Arrangement Summary**
**Non-Sales Positions**
**Highlights as of Today's date**

Today's Date: 5/23/06                    EMC Member: _____

Employee Name: Lizabeth Agustine        Department: Marketing

Manager Name: Jeanne O'Connor

For the purposes of this document, a flexible work arrangement is any agreement that allows an employee to work in a manner that departs from the traditional core hours of 9 – 5 p.m., five days a week in a designated AXA Equitable office location.

Flexible Work Arrangement (Check all that apply)

_____ 1. Part-time or Reduced Work Week (scheduled to work less than 36.25 hours per week)

2. Staggered Hours:
_____ a. Late starting time: after 9 a.m./Part-time (scheduled to work less than 36.25 hours per week)

_____ b. Late starting time/Full-time: arrives after 9 am and is scheduled to depart later than core hours (scheduled to work at least 36.25 hours per week)

_____ c. Early starting time/Full-time: arrives before 9 am and is scheduled to depart earlier than core hours (scheduled to work at least 36.25 hours per week)

_____ d. Early starting time/Part-time: arrives before 9 am and is scheduled to depart earlier than core hours (scheduled to work less than 36.25 hours per week)

__X__ 3. Floating Hours: Employees that are scheduled to work 8 hours a day but are given flexibility to arrive at work after 9 am and make up their hours at the end of the traditional work day.

__X__ 4. Telecommuting: (Certain days employee is scheduled to work out of the office)

_____ 5. Condensed work week (scheduled to work at least 36.25 hours per week in less than 5 work days)

_____ 6. Job Sharing: an individual who is working part-time and sharing a full-time position with another part-time employee

_____ 7. Other: Please explain any arrangement other than those noted above.
    Due to my 6 year old daughter's health maintenance
    I arrive after 9 and leave at 4:15 - work is done
    commuting/evenings/weekends - whatever is required

Please indicate whether the above arrangement is in writing. YES_____ NO_____

Please indicate the approximate date that this arrangement was agreed upon. 11/2003

Please indicate whether the above individual is on a Transitional Leave (leave following a FMLA or Disability leave)
    YES_____ NO_____

Please indicate whether the above arrangement is expected to be a temporary arrangement. YES_____ NO__X__
If yes, please indicate for how long. _____

*The above is a summary and is not intended to fully detail the arrangements. Arrangements are subject to change at any time, at management's discretion.*

Confidential

AXA/LA000539


EXHIBIT
C

Report ID: ANRRAD17

AXA Financial
Human Resource Administration

Absence Report by Employee for 1/1/2006 to 11/09/2006

Page No.  1
Run Date 11/09/2006
Run Time 11:21:27

| Name: | AUGUSTINE, LISABETH J | | Organization: | 41100 |
| Employee ID: | E05107 | | Description: | Leads Generation |

| PTO at the Beginning of the Year: | 2.49 | | |
| PTO Accrued: | 32.02 | Accrual Rate: | 2.00 |
| PTO Used: | 27.50 | | |
| PTO Unapproved: | 0.00 | | |
| PTO Adjusted: | 0.00 | | |
| Current Balance | 3.10- | | |

| Effective Date | Absence Code | Absence Description |
| --- | --- | --- |
| 01/04/2006 | 33 | Worked from Home |
| 01/11/2006 | 33 | Worked from Home |
| 01/13/2006 | 13 | Half Day PTO |
| 01/17/2006 | 13 | Half Day PTO |
| 01/18/2006 | 01 | Sick |
| 01/30/2006 | 05 | PTO Day |
| 02/01/2006 | 33 | Worked from Home |
| 02/03/2006 | 05 | PTO Day |
| 02/08/2006 | 33 | Worked from Home |
| 02/15/2006 | 33 | Worked from Home |
| 02/16/2006 | 13 | Half Day PTO |
| 02/21/2006 | 01 | Sick |
| 03/01/2006 | 33 | Worked from Home |
| 03/08/2006 | 33 | Worked from Home |
| 03/15/2006 | 33 | Worked from Home |
| 03/22/2006 | 33 | Worked from Home |
| 03/23/2006 | 05 | PTO Day |
| 03/24/2006 | 05 | PTO Day |
| 03/27/2006 | 05 | PTO Day |
| 03/28/2006 | 05 | PTO Day |
| 03/29/2006 | 05 | PTO Day |
| 03/30/2006 | 05 | PTO Day |
| 03/31/2006 | 05 | PTO Day |
| 04/03/2006 | 05 | PTO Day |
| 04/05/2006 | 01 | Sick |
| 04/07/2006 | 33 | Worked from Home |
| 04/12/2006 | 01 | Sick |
| 04/20/2006 | 33 | Worked from Home |
| 04/26/2006 | 33 | Worked from Home |
| 05/12/2006 | 33 | Worked from Home |
| 05/15/2006 | 33 | Worked from Home |
| 05/16/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/17/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/18/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/19/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/25/2006 | 18 | Business related Class/Seminar/Meeting |
| 06/01/2006 | 33 | Worked from Home |
| 06/08/2006 | 33 | Worked from Home |
| 06/09/2006 | 33 | Worked from Home |
| 06/12/2006 | 05 | PTO Day |
| 06/13/2006 | 05 | PTO Day |
| 06/14/2006 | 05 | PTO Day |
| 06/15/2006 | 05 | PTO Day |
| 06/20/2006 | 05 | PTO Day |
| 06/21/2006 | 05 | PTO Day |
| 06/23/2006 | 05 | PTO Day |
| 06/29/2006 | 13 | Half Day PTO |
| 07/06/2006 | 33 | Worked from Home |
| 07/07/2006 | 33 | Worked from Home |
| 07/13/2006 | 33 | Worked from Home |
| 07/20/2006 | 33 | Worked from Home |
| 07/27/2006 | 33 | Worked from Home |

AXA/LA000643

Report ID: AX100317

AXA Financial
Human Resource Administration

Absence Report by Employee for 3/1/2006 to 11/03/2006

Page No.  2
Run Date 11/05/2006
Run Time 11:21:27

| Effective Date | Absence Code | Absence Description |
|---|---|---|
| 08/03/2006 | 33 | Worked from Home |
| 08/10/2006 | 33 | Worked from Home |
| 08/18/2006 | 33 | Worked from Home |
| 08/23/2006 | 13 | Half Day PTO |
| 08/25/2006 | 33 | Worked from Home |
| 08/28/2006 | 05 | PTO Day |
| 08/29/2006 | 05 | PTO Day |
| 08/30/2006 | 05 | PTO Day |
| 08/31/2006 | 05 | PTO Day |
| 09/01/2006 | 05 | PTO Day |
| 09/05/2006 | 05 | PTO Day |
| 09/06/2006 | 05 | PTO Day |
| 09/12/2006 | 33 | Worked from Home |
| 09/19/2006 | 33 | Worked from Home |
| 09/26/2006 | 33 | Worked from Home |
| 10/03/2006 | 33 | Worked from Home |
| 10/10/2006 | 33 | Worked from Home |
| 10/13/2006 | 13 | Half Day PTO |
| 10/17/2006 | 13 | Half Day PTO |
| 10/24/2006 | 33 | Worked from Home |
| 10/31/2006 | 33 | Worked from Home |
| 11/03/2006 | 05 | PTO Day |
| | 01 | PTO Day |

Confidential

AXA/LA000644



EXHIBIT

D

AXA Financial
Human Resource Administration

Report ID: XXXHR017

Page No.  1
Run Date 11/26/2006
Run Time 13:33:30

Absence Report by Employee for 1/1/2006 to 11/26/2006

Name:              AUGUSTINE, LIZABETH J
Employee ID:       EUS307

Organization:      41100
Description:       Leads Generation

PTO at the Beginning of the Year:     2.40
PTO Accrued:                         22.00
PTO Used:                            29.50
PTO Unapproved:                       0.00
PTO Adjusted:                         0.00

Accrual Rate:                         2.00

Current Balance                       5.10

| Effective Date | Absence Code | Absence Description |
|---|---|---|
| 01/04/2006 | 33 | Worked from Home |
| 01/11/2006 | 33 | Worked from Home |
| 01/13/2006 | 13 | Half Day PTO |
| 01/17/2006 | 13 | Half Day PTO |
| 01/18/2006 | 01 | Sick |
| 01/30/2006 | 05 | PTO Day |
| 02/01/2006 | 33 | Worked from Home |
| 02/03/2006 | 05 | PTO Day |
| 02/08/2006 | 33 | Worked from Home |
| 02/15/2006 | 33 | Worked from Home |
| 02/16/2006 | 13 | Half Day PTO |
| 02/21/2006 | 01 | Sick |
| 03/01/2006 | 33 | Worked from Home |
| 03/08/2006 | 33 | Worked from Home |
| 03/15/2006 | 33 | Worked from Home |
| 03/23/2006 | 33 | Worked from Home |
| 03/24/2006 | 05 | PTO Day |
| 03/27/2006 | 05 | PTO Day |
| 03/28/2006 | 05 | PTO Day |
| 03/29/2006 | 05 | PTO Day |
| 03/30/2006 | 05 | PTO Day |
| 03/31/2006 | 05 | PTO Day |
| 04/03/2006 | 05 | PTO Day |
| 04/05/2006 | 01 | Sick |
| 04/07/2006 | 33 | Worked from Home |
| 04/12/2006 | 01 | Sick |
| 04/28/2006 | 33 | Worked from Home |
| 04/26/2006 | 33 | Worked from Home |
| 05/12/2006 | 33 | Worked from Home |
| 05/15/2006 | 33 | Worked from Home |
| 05/16/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/17/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/18/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/19/2006 | 18 | Business related Class/Seminar/Meeting |
| 05/25/2006 | 18 | Business related Class/Seminar/Meeting |
| 06/01/2006 | 33 | Worked from Home |
| 06/08/2006 | 33 | Worked from Home |
| 06/09/2006 | 33 | Worked from Home |
| 06/12/2006 | 05 | PTO Day |
| 06/13/2006 | 05 | PTO Day |
| 06/14/2006 | 05 | PTO Day |
| 06/15/2006 | 05 | PTO Day |
| 06/20/2006 | 05 | PTO Day |
| 06/21/2006 | 05 | PTO Day |
| 06/22/2006 | 05 | PTO Day |
| 06/29/2006 | 13 | Half Day PTO |
| 07/06/2006 | 33 | Worked from Home |
| 07/07/2006 | 33 | Worked from Home |
| 07/13/2006 | 33 | Worked from Home |
| 07/20/2006 | 33 | Worked from Home |
| 07/27/2006 | 33 | Worked from Home |

Confidential

AXA/LA000645

AXA Financial
Human Resource Administration

Report ID: AXHRN017

Absence Report by Employee for 1/1/2006 to 11/28/2006

Page No.  2
Run Date 11/28/2006
Run Time 11:33:38

| Effective Date | Absence Code | Absence Description |
|---|---|---|
| 08/03/2006 | 33 | Worked from Home |
| 08/16/2006 | 33 | Worked from Home |
| 08/18/2006 | 33 | Worked from Home |
| 08/22/2006 | 13 | Half Day PTO |
| 08/25/2006 | 33 | Worked from Home |
| 08/28/2006 | 05 | PTO Day |
| 08/29/2006 | 05 | PTO Day |
| 08/30/2006 | 05 | PTO Day |
| 08/31/2006 | 05 | PTO Day |
| 09/01/2006 | 05 | PTO Day |
| 09/05/2006 | 05 | PTO Day |
| 09/08/2006 | 33 | Worked from Home |
| 09/12/2006 | 33 | Worked from Home |
| 09/19/2006 | 33 | Worked from Home |
| 09/26/2006 | 33 | Worked from Home |
| 10/03/2006 | 33 | Worked from Home |
| 10/10/2006 | 13 | Half Day PTO |
| 10/13/2006 | 13 | Half Day PTO |
| 10/17/2006 | 33 | Worked from Home |
| 10/24/2006 | 33 | Worked from Home |
| 10/31/2006 | 05 | PTO Day |
| 11/06/2006 | 05 | PTO Day |
| 11/07/2006 | 05 | PTO Day |
| 11/15/2006 | 05 | PTO Day |

Confidential

AXA/LA000646

EXHIBIT
E

From: Jeanne O'Connor
Sent: Monday, November 20, 2006 2:25:43 PM
To: Cynthia D Stern
Subject: Re: Borrowing PTO Days

Cinday:
Did she ever update the FMLA form?
Jeanne O'Connor
VP, Customer Acquisition, Cross-Sales & Retention
Customer Marketing Group
AXA Equitable/1290 Ave. of the Americas, 7th fl./New York, NY 10104
Phone: (212) 314-2955/Fax: (212) 707-7775
jeanne_o'connor@mony.com

        Cynthia D Stern
        11/20/2006 12:09 PM
                    To: Jeanne O'Connor/Distribution Communication/MONY@AXA-EQUITABLE
                    cc:
                    Subject: Re: Borrowing PTO Days

They are borrowed against the next year's PTO days.

Cindy Stern
Customer Retention & Cross-Sales
Customer Marketing Group
AXA Equitable
1290 Ave. of the Americas, 7th Floor
New York, NY 10104

Phone: 212-314-2906
Fax: 212-707-7478

-----Jeanne O'Connor/Distribution Communication/MONY wrote: -----

To: Cynthia D Stern/NY/AXA-Financial/Equitable@AXA-Equitable
From: Jeanne O'Connor/Distribution Communication/MONY
Date: 11/17/2006 01:20PM
Subject: Re: Borrowing PTO Days

So are borrowed days unpaid or borrowed against the following year?
Jeanne O'Connor
VP, Customer Acquisition, Cross-Sales & Retention
Customer Marketing Group
AXA Equitable/1290 Ave. of the Americas, 7th fl./New York, NY 10104
Phone: (212) 314-2955/Fax: (212) 707-7775
jeanne_o'connor@mony.com
Cynthia D Stern

        Cynthia D Stern
        11/16/2006 05:21 PM

    To:     Jeanne O'Connor
    cc:
    Subject:    Borrowing PTO Days

According to the Management Guide:
Employees with at least one year of service and satisfactory performance may
borrow PTO up to 5 times the monthly PTO accrual (10 days). Borrowing PTO
requires the employee's written request and written approval by the
employee's manager.

Confidential

AXA/LA002086



EXHIBIT

F



REQUEST FOR FAMILY MEDICAL LEAVE, PERSONAL LEAVE OR EXTENDED LEAVE
This leave is designated as leave granted pursuant to the Family and Medical Leave Act (FMLA)

Name: _Lizbeth Augustine_    Emp ID: _505107_

Department: _Customer Marketing Group_

Manager: _Cynthia Stan_    Telephone: _212 314 - 2906_

Type of Leave (Disability, Family Medical Leave, Personal Leave of Absence): _Family Leave_

Paid Time Off (Accrued and Unused) to be used    _0_    Days

Last Day Worked: _____

Duration of Leave of Absence

Sick Days                                    Start _____ End _____

Short Term Disability (STD)                  Start _____ End _____

Paid Time Off (PTO Days)*                    Start _____ End _____
Must be approved by your Manager

Unpaid Family Medical Leave of Absence *     Start _____ End _____
Must be approved by your Manager for Leaves greater than 12 weeks (including paid sick days, STD and PTO days)

Intermittent Family Medical Leave            Start _12/21/06_ End _4/15/07_
Pending medical certification if applicable  Weekly Schedule: _3 days in the office_
                                                              _2 Days at home_

Transition-Time/Medical Reduced Schedule*    Start _____ End _____
Must be approved by your Manager             Weekly Schedule: _____

Personal Leave of Absence**                  Start _____ End _____
Must be approved by your Manager and Sr. Vice President

Expected Full Time Return to Work Date    _____

* Approved by Manager: _____    Date: _____

**Approved by Sr. Vice President: _____    Date: _____

## GROUP INSURANCE BENEFIT ELECTION DURING LEAVE OF ABSENCE

_✓_ I elect to continue    my Group Insurance coverages in force prior to my leave of absence, with the
exception of Disability Pay Plans, and I agree to pay the necessary monthly
contribution required by this Election. I understand that these contributions are due
and payable no later than the last day of the month in which they are due. If this
amount is not paid by such date, my Group Insurance coverages will terminate.

_____ I elect NOT to continue    my Group Insurance coverages during my leave of absence.

Signature _Augustine_    Date: _12/14/06_

Home Address _7 Painted Wagon Rd    Holmdel    NJ    07733_
12/15/05    Number and Street Address    City or Town    State    Zip Code

Return Form to:    AXA Financial
Corporate Benefits
100 Madison Street, MD 33-3
Syracuse, NY 13202
FAX: 315-477-3364

Confidential

AXA/LA000542

12/13/2006 WED 14:08 FAX 2123142199          1HCG

Certification of Health Care Provider
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



*(When completed, this form goes to the employee, Not to the Department of Labor.)*

OMB No.: 1215-0181
Expires:    07/31/07

| 1. Employee's Name | 2. Patient's Name *(if different from employee)* |
|---|---|
| LIZ AUGUSTINE | MEGAN McEVOY |

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described? If so, please check the applicable category.

(1)_____ (2)_____ (3)_____ (4) ✓ (5)_____ (6) ✓ , or None of the above _____

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

   Six year old with history of juvenile recurrent
   ragged papillamotous requiring tracheotomy, recent
   airway surgery. No longer has tracheotomy but has long
   term airway and lung damage as a result of
   condition and treatment

5. a. State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity[2] if different):

   Commenced 7/00

   duration - 5 yrs

   b. Will it be necessary for the employee to take work only **intermittently** or to work on a **less than full schedule** as a result of the condition (including for treatment described in item 6 below)?

   yes

   If yes, give the probable duration:  5 yrs

   c. If the condition is a **chronic condition** (condition #4) or pregnancy, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

   Chronic condition

---

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Form WH-380
Revised December 1993

12/13/2006 WED 14:05 FAX 2123142189          IMC

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

*cannot be predicted*

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

b. If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments:

*Patient sees a specialist in pulmonary medicine and a pediatric ENT specialist*

c. If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

*Albuterol inhalation, oxygen as needed, antibiotics as needed*

7. a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

c. If neither a. nor b. applies, is it necessary for the employee to be absent from work for treatment?

8. a. If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

b. If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable duration of this need:

---

| | |
|---|---|
| Signature of Health Care Provider | Type of Practice |

**UPTOWN PEDIATRICS**
Ramon J.C. Murphy, MD
John O. Larsen, MD   Sigmund Larsen, MD
Beth Cohen, MD   Daniel Camerman, MD
Ivanya L. Alpert, MD
1245 Park Avenue
New York, NY 10128
Tel: 212-427-0540  Fax: 212-534-1086

| | |
|---|---|
| Address | Telephone Number |
| | Date |

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

| | |
|---|---|
| Employee Signature | Date |

12/13/2006 WED 14:06 FAX 2123142100          INLG

A "Serious Health Condition" means an illness, injury impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

   Inpatient care (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

   (a) A period of incapacity[2] of **more than three consecutive calendar days** (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

      (1) Treatment[3] **two or more times** by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

      (2) Treatment by a health care provider on at least one occasion which results in a **regimen of continuing treatment**[4] under the supervision of the health care provider.

3. Pregnancy

   Any period of incapacity due to **pregnancy**, or for **prenatal care**.

4. Chronic Conditions Requiring Treatments

   A chronic condition which:

      (1) Requires **periodic visits** for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

      (2) Continues over an **extended period of time** (including recurring episodes of a single underlying condition); and

      (3) May cause episodic rather than a continuing period of incapacity[2] (*e.g.*, asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

   A period of incapacity[2] which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

   Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

**Public Burden Statement**

We estimate that it will take an average of 20 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.**