# DECLARATION OF
# DOROTHY ROSENSWEIG, ESQ.
# EXHIBIT S

**The Roth Law Firm, PLLC**

545 Fifth Avenue, Suite 960
New York, New York 10017
Tel.: (212) 542-8882  Facsimile: (212) 542-8883

May 29, 2007

<u>Via Federal Express</u>
Richard V. Silver, Executive Vice President and General Counsel
AXA Equitable Life Insurance Company Law Department
1290 Avenue of the Americas, 12th Floor
New York, New York 10104

Dear Mr. Silver:

    We represent Lizabeth Augustine regarding her termination from AXA Equitable Life Insurance Company ("AXA") on January 31, 2007. This letter follows a telephone conversation that we had with B. Simeon Goldstein, Esq. on or about March 13, 2007.

    The purpose of this letter is to place you on notice of a claim which will be brought by Ms. Augustine against AXA for her improper termination in violation of the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. Ms. Augustine shall be seeking damages for said misconduct.

<u>The Underlying Facts</u>

    By way of background, from May 28, 1998 to September 1999 and again from March 2003 to January 31, 2007, Ms. Augustine was an employee in the Marketing and Product Development business unit at AXA and its predecessor companies. Prior to that, Ms. Augustine was a sales associate (from March 1, 1987 through February 28, 1990), an independent contractor (from March 1, 1990 through January 31, 1993), a district manager (from February 1, 1993 through June 30, 1994), an independent contractor (from July 1, 1994 through May 27, 1998), and a business manager in the Technology Solutions Group (from September 1999 through March 2003). During that entire time period, which comprises nearly twenty consecutive years, Ms. Augustine loyally, professionally, and competently served AXA.

    Unfortunately, Ms. Augustine's six year old daughter, Megan McEvoy, was diagnosed with Recurrent Respiratory Papillomatosis ("RRP") at the age of five months. Because of her serious ailment, Megan has undergone 47 surgeries and two experimental treatment protocols. In addition, she had a tracheotomy tube and gastrostomy tube from the age of one to two. Although Megan's health has steadily improved over the past two years, she had required and continues to require additional surgery every six to eight months.

Mr. Silver
May 29, 2007
Page 2

AXA was put on notice of Megan's diagnosis at the time Megan had a tracheotomy at the age of one. It was, therefore, at all times well aware of the details of Megan's condition. It knew that, because of Megan's ailment, Ms. Augustine was required to take family leave in 2001 when Megan needed a tracheotomy and again in 2003 when Megan underwent an experimental treatment to insure that the tracheotomy tube would never again be needed. Unfortunately, in December 2006, Megan began having RPP symptoms, requiring surgery and several doctor appointments. At that point, Ms. Augustine did not have any remaining paid time-off days.

As a result of Megan's December 2006 reoccurrence, Ms. Augustine submitted a Request for Family Medical Leave form, as well as a Certification of Health Care Provider form completed by Megan's Pediatrician on December 13, 2006, asking for her employer to grant the request and allow Ms. Augustine to take days without pay to care for Megan. Her request, however, was ignored. Indeed, she asked time and time again for approval and was shot down. Specifically, her superiors refused to sign the request form, which would have allowed Ms. Augustine to be at her daughter's side. The refusal to sign the form became an issue between Ms. Augustine and her superiors.

On January 31, 2007, AXA wrongfully terminated Ms. Augustine, thereby assuring that it would never again have to grant leave permitted under the FMLA or ever again have to honor Ms. Augustine's entitlement.

### The Relevant Law

Section 2612(a)(1) of the FMLA provides:

[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
(C) In order to care for the ... daughter ... of the employee, if such ... daughter ... has a serious health condition.

Ms. Augustine was an "eligible employee," as she was employed by AXA for at least twelve months and for at least 1,250 hours of service during the previous twelve month period. § 2611(2)(A). And Megan's health condition, RRP, is life threatening. Thus, Ms. Augustine had a right to 12 workweeks of leave to care for Megan.

Section 2615(a)(1) continues: "It shall be unlawful for any employer to ... deny the exercise of ... any right provided under this subchapter."

To add insult to injury, AXA advised Ms. Augustine that the reason for her termination after nearly twenty consecutive years of employment was because her job was being "eliminated" as part of a reorganization of the Marketing and Product Development business unit. Our office was further told by Mr. Goldstein that the decision had been made months before Ms. Augustine submitted the Request for Family Medical Leave form and Certification of Health Care Provider form.

Confidential
AXA/LA000147

Mr. Silver
May 29, 2007
Page 3

That the decision was made months before greatly surprised Ms. Augustine. Ms. Augustine was particularly shocked that certain individuals who she reported to, including a Senior Vice President, did not know about the longstanding decision. Further, other individuals with whom she worked and who were superiors were providing her new assignments on or about the termination date. Accordingly, the reason AXA set forth for the termination, that Ms. Augustine's job was being eliminated, is highly suspect, especially when very senior employees had no knowledge of said elimination.

### Damages

As a result of AXA's conduct, Ms. Augustine is entitled to significant damages which are set forth in section 2617(a)(1), titled "Liability":

Any employer who violates section 2615 of this title shall be liable to any eligible employee affected--
(A) for damages equal to--
(i) the amount of--
(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; ...
(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and
(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), ... and
(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

"Employment benefits" means all benefits...including group life insurance, health insurance, disability insurance, sick leave, annual leave, educational benefits, and pensions..." § 2611(5).

By reason of AXA's violation of the FMLA, Ms. Augustine has lost her salary and employment benefits. Most significantly, she no longer has the health insurance needed for Megan's care. Despite Ms. Augustine's reasonable efforts, she has been unable to find a job that offers comparable employment benefits. Therefore, Ms. Augustine seeks equitable relief under the FMLA as well.

Finally, section 2617(a)(3) provides for fees and costs:

The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.

Confidential
AXA/LA000148

Mr. Silver
May 29, 2007
Page 4

### Demand

As a result of AXA's conduct, we have been authorized to fully and vigorously pursue Ms. Augustine's rights. As we believe litigation is not in your best interests, we will first make ourselves available to discuss this matter. However, should this matter not resolve in an amicable fashion within ten business days from the date hereof, our client has authorized us to commence an action in the United States District Court for the Southern District of New York for, *inter alia*, AXA's violation of 29 U.S.C. §§ 2601 *et seq*. In the litigation, Ms. Augustine will seek all of the damages to which she is entitled, including lost wages, liquidated statutory damages, costs, attorneys fees, as well as interest.

Please be guided by this letter.

Sincerely,

Richard A. Roth

cc: Debra L. Clawar

Confidential
AXA/LA000149