UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LIZABETH J. AUGUSTINE,

                              Plaintiff,

                     - against -

AXA FINANCIAL, INC. d/b/a
AXA EQUITABLE LIFE INSURANCE CO.

                             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ECF CASE**

Case No. 07 Civ. 8362 (RWS)(DFE)



**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
<u>MOTION TO AMEND FIRST COMPLAINT</u>**



Dated: New York, New York
       June 16, 2008



Dorothy Rosensweig, Esq.
Anna A. Cohen, Esq.
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500
(212) 661-0989 (fax)
drosensweig@ebglaw.com
acohen@ebglaw.com

Attorneys for Defendant
AXA Equitable Life Insurance Company

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   RELEVANT FACTS/PRIOR PROCEEDINGS.................................................. 2

III.  STANDARD.......................................................................................................... 5

IV.   ARGUMENT ....................................................................................................... 6

      A.    Plaintiff Has Not Shown Good Cause For The Late Joinder Of Additional
           Defendants. ....................................................................................................... 6

           1.    Plaintiff knew sufficient facts to name O'Connor in her original
                Complaint.......................................................................................9

           2.    Plaintiff knew sufficient facts to name Stern in her original
                Complaint......................................................................................11

           3.    Plaintiff knew sufficient facts to name DeRoche in her original
                Complaint......................................................................................13

            4.    Plaintiff knew sufficient facts to name Dennis in her original
                Complaint......................................................................................14

      B.    Plaintiff Had All The Information Necessary To Assert A Claim Under The
           New York City Human Rights Law In Her Original Complaint. ......................... 14

      C.    Plaintiff Had The Documents And Information She Seeks To Use As
           Exhibits To The Proposed Amended Complaint Prior To Filing Her
           Original Complaint. ............................................................................................ 17

V.    CONCLUSION................................................................................................... 17

NY:2674259v1

# TABLE OF AUTHORITIES

## CASES

Baergas v. City of New York, No. 04 Civ. 2944, 2005 U.S. Dist. LEXIS 18785
(S.D.N.Y. Sept. 1, 2005)...........................................................................................8

Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439 (W.D.N.Y. 1997) ..................................16

Colorado Capital v. Owens, 227 F.R.D. 181 (E.D.N.Y. 2005) ........................................................6

Covington v. Police Officer Thomas Kid, No. 94 Civ. 4234, 1999 U.S. Dist.
LEXIS 64 (S.D.N.Y. Jan. 7, 1999) ................................................................................6

Glover v. Jones, No. 05-CV-6124, 2006 U.S. Dist. LEXIS 80667 (S.D.N.Y. Nov.
3, 2006) ..........................................................................................................................6

Int'l. Media Films, Inc. v. Lucas Entm't., Inc., No. 07 Civ. 1178, 2008 U.S. Dist.
LEXIS 27989 (S.D.N.Y. Apr. 8, 2008) .....................................................................6, 18

McCormick v. Medicalodges, Inc., No. Civ. A. 05-2429-KHV, 2007 WL. 471127
(D. Kan. Feb. 8, 2007) ................................................................................................16

Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir. 2000)...........................................5, 6, 7

Estate of Ratcliffe v. Pradera Realty Co., No. 05 Civ. 10272, 2007 WL. 3084977
(S.D.N.Y. Oct. 19, 2007) ............................................................................................18

Rent-A-Center, Inc., v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100 (S.D.N.Y.
2003) ...............................................................................................................................7

Scott v. City of New York Dep't of Corr., No. 04 Civ. 9638, 2007 WL. 4178405
(S.D.N.Y. Nov. 26, 2007) ...........................................................................................16

Sengillo v. Valeo Elec. Sys., No. 03-cv-6509L, 2005 U.S. Dist. LEXIS 37076
(W.D.N.Y. July 8, 2005).............................................................................................7, 8

Sosa v. Airprint Systems, Inc., 133 F.3d 1417 (11th Cir. 1998)......................................................6

Trezza v. NRG Energy, Inc., 06-cv-11509 2008 U.S. Dist. LEXIS 15478, at *19
(S.D.N.Y. Feb. 28, 2008)...............................................................................................7

Zakre v. Norddeutsche Landesbank Girozentrale, 541 F. Supp. 2d 555,
2008 WL 351662 (S.D.N.Y. Feb. 8, 2008)..................................................................19

## FEDERAL RULES/STATUTES

Family and Medical Leave Act of 1993, 29 U.S.C.A. §2601, *et seq.*................................2, 6, 9, 11

Fed. R. Civ. P. 15(a) ........................................................................................................5

Fed. R. Civ. P. 16(b) ..................................................................................................4, 5, 18

## STATE STATUTES

New York City Human Rights Law, N.Y. Admin. Code § 8-101, *et seq.*..........1, 2, 6, 8, 14, 16, 19

I.       **PRELIMINARY STATEMENT**

Defendant AXA Equitable Life Insurance Company (incorrectly named in the caption as "AXA Financial, Inc. d/b/a AXA Equitable Life Insurance Co.") (referred to herein as "AXA"), by its attorneys Epstein Becker & Green, P.C., submits this Memorandum of Law in opposition to Plaintiff's Motion to Amend First Complaint pursuant to Rules 15(a) and 16(b) of the Federal Rules of Civil Procedure.   Three and one-half months after the February 15, 2008 deadline set forth in the Scheduling Order, Plaintiff seeks to amend her Complaint to join four additional individual defendants, add an entirely new cause of action for associational discrimination under the New York City Human Rights Law and seek punitive damages against AXA and the proposed individual defendants.   Permitting Plaintiff to so amend her Complaint will significantly expand the issues of liability and damages and virtually turn back the clock to the inception of this case.

Plaintiff has utterly failed to show the required "good cause" to amend her Complaint at this late date.   Plaintiff knew, or should have known through the exercise of reasonable diligence, even before she filed her original Complaint in September 2007, of the applicable law and "information" that Plaintiff now claims she first learned in the documents produced by AXA on March 11, 2008.[1]   The identities and participation in relevant events of the four AXA employees Plaintiff now seeks to name as defendants- Senior Vice President James C. Dennis ("Dennis), who headed the Customer Marketing Group in which Plaintiff worked; Plaintiff's supervisors Vice Presidents Jeanne O'Connor ("O'Connor") and Cynthia D. Stern ("Stern"); and Human Resources Relationship Manager Lisa A. DeRoche ("DeRoche") - and the alleged facts based on which she now seeks to assert a claim of associational discrimination were

---

[1] Unless otherwise specified, all subsequent dates refer to 2008.

known to Plaintiff well before March 11, 2008, as is established by uncontrovertible documentary evidence. The relevant statutory provisions of the Family and Medical Leave Act ("FMLA"), and New York City Human Rights Law ("NYCHRL") were in place long before Plaintiff filed her original Complaint. Plaintiff's failure to timely review them and/or analyze their applicability based on information she has possessed even prior to bringing suit does not constitute good cause. Further, contrary to Plaintiff's conclusory assertion, AXA will indeed be prejudiced if Plaintiff is permitted to amend her Complaint at this late stage in the litigation. Thus, Plaintiff's motion should be denied.

## II.     RELEVANT FACTS/PRIOR PROCEEDINGS

On September 26, 2007, Plaintiff filed the original Complaint in this action (Declaration of Dorothy Rosensweig, Esq. dated June 16, 2008 ("Rosensweig Decl."), Exhibit A). On November 16, 2007, AXA filed its Answer (Rosensweig Decl. Exhibit B).

On December 26, 2007, AXA noticed Plaintiff's deposition for February 7. This date was adjourned due to Plaintiff's failure to timely provide AXA's counsel with properly executed medical authorizations (Rosensweig Decl. ¶ 4).

On January 9, AXA served its Initial Disclosures pursuant to Rule 26(a), identifying Dennis, O'Connor, Stern and DeRoche as individuals who may have discoverable information concerning: (i) Plaintiff's job duties, responsibilities, performance and attendance; (ii) AXA's FMLA leave request policies and procedures; and (iii) AXA's Customer Marketing Group Reorganization and elimination of Plaintiff's position (Rosensweig Decl. ¶ 5, Exhibit C).

The same day, Plaintiff served her initial Disclosures on AXA, identifying Dennis, O'Connor, Stern and DeRoche as individuals who may have knowledge concerning,

among other things:  (i) Plaintiff's allegedly exemplary job performance and history; (ii) AXA's FMLA policies and procedures and failure to respond to Plaintiff's FMLA request; (iii) Plaintiff's daughter's life threatening health condition; and (iv) the December 20, 2006 "Reorganization Justification Document" that "eliminated and replaced" Plaintiff's position (Rosensweig Decl. ¶ 6, Exhibit D).  Clearly, prior to January 9 (more than a month in advance of the Scheduling Order deadline for motions to amend the Complaint/join additional parties, Plaintiff had all necessary information relative to these individuals.  Notwithstanding, Plaintiff did not make any attempt to seek to take the depositions of any of these individuals until May 12, 2008, 3 months after the deadline to amend her Complaint or join additional parties set forth in the Scheduling Order and 2 months after receiving AXA's March 11 document production (Rosensweig Decl. ¶¶ 6, 9, 17, Exhibits G and N).

On January 10, 2008, Plaintiff served her First Set of Interrogatories on AXA.  Of the 23 interrogatories (not including numerous subparts contained therein), all but one violated Local Rule 33.3 as they sought information beyond that permitted in the Rule (Rosensweig Decl. ¶ 7, Exhibit E).  On January 15, AXA's counsel advised Plaintiff's counsel that all but No. 8 of Plaintiff's interrogatories were in violation of Rule 33.3 and accordingly AXA would not respond to them other than to assert objections (Rosensweig Decl. ¶ 8).  Interrogatory No. 8 requested the identity of all individuals who participated in the decision-making process to terminate Plaintiff's employment with AXA (Rosensweig Decl. Exhibit E).  In its February 26, 2008 response, AXA identified the relevant individuals as Dennis, O'Connor and Stern (Rosensweig Decl. ¶ 8, Exhibit F).

On January 14, Judge Sweet "So Ordered" the parties' Joint Rule 26(f) Report and Proposed Joint Discovery Plan (the "Scheduling Order") (Rosensweig Decl. Exhibit G).

Paragraph 3 set the deadline to amend pleadings, including joinder of additional parties, as February 15, 2008; the close of discovery as August 31, 2008; and the due date for summary judgment motions or, if no such motions are made, the pretrial order, as October 31, 2008. Paragraph 7 explicitly states that "[a] scheduling order will be modified by the Court only upon a showing of good cause.  Fed. R. Civ. P. 16(b)."  (Rosensweig Decl. ¶ 9, Exhibit G).

On March 11, AXA produced documents in response to Plaintiff's First Request for Production of Documents  (Rosensweig Decl. ¶ 10).[2]  Plaintiff's counsel had completed their review of AXA's document production by March 27, as evidenced by their letter of that date (Rosensweig Decl. ¶ 11, Exhibit H).

On April 7 and 9, Plaintiff objected to the designation as "confidential" of 53 pages of documents in AXA's document production (Rosensweig Decl. ¶ 12, Exhibit J), even though the time to do so under the Stipulation and Order Governing the Protection and Exchange of Confidential Material ("Confidentiality Order") had expired on March 28 (Rosensweig Decl. ¶ 12, Exhibit I ¶ 16).

On April 10, AXA's counsel served an Amended Notice of Deposition to take Plaintiff's deposition on May 29 (Rosensweig Decl. ¶ 13, Exhibit K).  On April 11, Plaintiff's counsel confirmed that "Plaintiff and I are available on Thursday, May 29, 2008 at 10:00 a.m. for the deposition of Plaintiff to take place in your office."  (Rosensweig Decl. ¶ 14, Exhibit L).

On April 18, Plaintiff's counsel e-mailed to AXA's counsel a proposed First Amended Complaint  ("Amended Complaint") (Rosensweig Decl. ¶ 15, Exhibit M).

---

[2] Plaintiff disingenuously implies that AXA's production was late (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Amend First Complaint ("Plaintiff's Memorandum"), p. 1 No. 4).  It was not.  On February 6, 2008 and February 21, 2008, AXA requested from Plaintiff's counsel and was granted extensions, until February 26 and March 11, respectively, to respond to Plaintiff's Request for Production (Rosensweig Decl.  ¶ 10).

On May 12, AXA advised Plaintiff that it would not consent to the proposed amendment of the Complaint.  On May 16, Plaintiff's counsel called AXA's counsel and demanded that AXA consent to the amendment or Plaintiff would file a new action and move to consolidate it with the instant case.  AXA's counsel responded that that would be an attempt to circumvent the Scheduling Order.  Plaintiff's counsel replied "Did we miss a deadline?"  AXA's counsel responded that they had (Rosensweig Decl. ¶ 16 ).

At 2:31 p.m. on Friday, May 23, the eve of the Memorial Day holiday, Plaintiff unilaterally abrogated Plaintiff's long-scheduled May 29 deposition because AXA would not consent to the amendment of the Complaint (Rosensweig Decl. ¶ 18, Exhibit 0).  On May 29, Plaintiff filed the instant motion to amend the Complaint.

On May 30, Plaintiff's counsel unilaterally announced that the 5 depositions Plaintiff wished to take would have to be rescheduled after the Court ruled on Plaintiff's motion to amend the Complaint (Rosensweig Decl. ¶ 20, Exhibit P).

## III.    STANDARD

Motions for leave to amend pleadings are initially governed by Fed. R. Civ. P. 15(a)'s relatively lenient standard providing that leave to amend a complaint "shall be freely given when justice so requires."  When however, as here, a motion for leave to amend is brought after the time period for amending pleadings has expired pursuant to a court's Scheduling Order, Rule 16(b)'s more stringent "good cause" standard governs.  Parker v. Columbia Pictures Indus.,

204 F.3d 326, 339-40 (2d Cir. 2000).[3]  See also Glover v. Jones, No. 05-CV-6124, 2006 U.S.

Dist. LEXIS 80667 (S.D.N.Y. Nov. 3, 2006); Colorado Capital v. Owens, 227 F.R.D. 181, 186

(E.D.N.Y. 2005); Parker, 204 F.3d at 340.  By limiting the time for amendments, the rule is

designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both

parties and the pleadings will be fixed.  Id. at 339-340.  As discussed below, Plaintiff herein does

not meet the "good cause" standard because there is no reason other than her lack of diligence or

inadvertence that the February 15, 2008 date for amendment/joinder of additional parties set

forth in the Scheduling Order could not have been met.

## IV.    ARGUMENT

### A.    Plaintiff Has Not Shown Good Cause For The Late Joinder Of Additional Defendants.

"Good cause" means that the schedule cannot reasonably be met despite the

diligence of the party seeking the extension.  Parker, 204 F.3d at 340; Covington v. Police

Officer Thomas Kid, No. 94 Civ. 4234, 1999 U.S. Dist. LEXIS 64 (S.D.N.Y. Jan. 7, 1999).  It

does not mean that a party failed to act with respect to information that it knew or should have

known with the exercise of reasonable diligence.  Plaintiff contends that she could not have

stated a claim against the individual defendants under the Family and Medical Leave Act, nor

could she have stated any claim under the New York City Human Rights Law, until after she

received AXA's March 11 document production.  To the contrary, Plaintiff had all the

information necessary to support her proposed amendments even before she filed her original

Complaint on September 26, 2007.  Under these circumstances, Plaintiff cannot establish "good

cause."  Sosa v. Airprint Systems, Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) (refusing to find

---

[3] Parker involved a motion to amend a complaint to add a claim only, and did not address the standard to be applied when joinder of additional parties was sought.  Subsequent case law has clarified that the same "good cause" standard applies in the latter case. Int'l. Media Films, Inc. v. Lucas Entm't., Inc., No. 07 Civ. 1178, 2008 U.S. Dist. LEXIS 27989  (S.D.N.Y. Apr. 8, 2008).

good cause where the information supporting the proposed amendment was available to the plaintiff even before he filed suit); Parker, 204 F.3d at 340-41 (denying leave to amend a complaint where the plaintiff had all the information necessary to support his claim, and nothing he learned in discovery or otherwise altered that fact); Trezza v. NRG Energy, Inc., 06-cv-11509 2008 U.S. Dist. LEXIS 15478, at *19 (S.D.N.Y. Feb. 28, 2008).  Sengillo v. Valeo Elec. Sys., No. 03-cv-6509L, 2005 U.S. Dist. LEXIS 37076, at *13 (W.D.N.Y. July 8, 2005) (finding that plaintiff had not demonstrated good cause for failing to seek leave to amend where plaintiff possessed all of the facts necessary to plead the proposed claim at the time of the initial pleading) (citation omitted); Rent-A-Center, Inc., v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003) (finding that the failure to comply with the court's scheduling order resulted from a lack of diligence because the substance of the "new" claim was known when the party filed their original pleading).

Additionally, Plaintiff cannot show that she diligently sought to comply with the Scheduling Order.  The proposed individual defendants and their believed areas of knowledge were named in the initial disclosures of both parties on January 9, thus giving Plaintiff ample time to seek and take their depositions before the February 15 deadline to join additional parties or amend the Complaint.  Yet Plaintiff made no attempt to seek their depositions until May 12, and has offered no explanation for this delay (Rosensweig Decl. ¶¶ 6, 17).  By March 27, Plaintiff's counsel had completed their review of AXA's document production, yet made no request to amend the Scheduling Order and waited an additional two months to file the instant motion to amend the Complaint (Rosensweig Decl. ¶ 11).[4]  Plaintiff has not only failed to show

---

[4] This is not the first time Plaintiff has shown a lack of diligence.  On January 10, she served interrogatories that flouted Local Rule 33.3.  On April 7, 2008 she objected to AXA's designation as "confidential" of certain documents in its March 11 production, even though the time to do so under the Confidentiality Stipulation and Order had expired on March 28.  Moreover,

that she has good cause to amend or exercised the requisite due diligence to comply with the Scheduling Order, she has offered no explanation at all for this 2 month delay.  Courts have consistently denied motions to amend where plaintiffs have missed deadlines in scheduling orders by comparable or even shorter amounts of time.  Baergas v. City of New York, No. 04 Civ. 2944, 2005 U.S. Dist. LEXIS 18785 (S.D.N.Y. Sept. 1, 2005) (denying motion to amend filed more than two months after the deadline in the scheduling order); Sengillo, 2005 U.S. Dist. LEXIS 37076 (denying motion for leave to amend complaint filed six weeks after the deadline to amend pleadings).

Plaintiff's proposed Amended Complaint seeks to (i) join Dennis, O'Connor, Stern and DeRoche as individual defendants on her FMLA and intentional infliction of emotional distress claims which were asserted in the original Complaint (1st, 2d and 4th causes of action in the proposed Amended Complaint); (ii) name the 4 individuals as defendants on an entirely new claim Plaintiff seeks to add for associational discrimination under the NYCHRL; and (iii) change or supplement numerous factual allegations in the original Complaint.[5]  Plaintiff claims that prior to AXA's document production, she was only "aware of the individuals' job titles, and that each may have possibly been somehow involved in her termination" and that it would have been "impossible" to amend her Complaint to name the individuals as defendants by the February 15, 2008 deadline in the Scheduling Order.  (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Amend First Complaint ("Plaintiff's Memorandum"), p.3-4).  Plaintiff correctly states that in her proposed Amended Complaint, she "elaborates that each of the individual's job responsibilities related to:  (i) Plaintiff's termination; (ii) supervising or

---

Plaintiff's objections to the confidentiality designations did not detail the basis for her belated objections, as required by the Confidentiality Order (Rosensweig Decl. ¶¶ 7, 12 Exhibits E, I, J).
[5] As discussed in Section B below, Plaintiff should not be permitted to add the proposed NYCHRL claim at all.  Plaintiff does not choose to advise the Court of what specific facts and exhibits she seeks to add (Plaintiff's Memorandum, p. 2).

controlling Plaintiff's work schedule or conditions of Plaintiff's employment; (iii) determining Plaintiff's rate and method of payment; and (iv) maintaining Plaintiff's employment records." Plaintiff, however, does not have any facts to support her claim that she learned these things only through AXA's March 11 document production. Rather, all she has done is recite the legal standard for individual liability under the FMLA, which existed long before Plaintiff filed her original Complaint. Plaintiff offers no explanation at all as to why she could not have named the proposed individuals as defendants on her intentional infliction of emotional distress claim in her original Complaint.

Incontrovertible documentary evidence, including information clearly in Plaintiff's possession and e-mails written by or to her, establishes that all "new" facts alleged by Plaintiff in her proposed Amended Complaint and all facts necessary to allow Plaintiff to assert claims against the proposed individual defendants were in fact known to her before she filed her original Complaint. Plaintiff's self-serving conclusory allegation that she could not have stated a claim against the individual defendants until after she received AXA's March 11, 2008 production is not true and is insufficient to establish the requisite good cause for amendment of the Complaint to add additional defendants, factual allegations and claims after the deadline set forth in the Scheduling Order.

### 1. Plaintiff knew sufficient facts to name O'Connor in her original Complaint.

From May 2006 through August 2006, Plaintiff reported directly to O'Connor. During that time, O'Connor supervised Plaintiff's work and work schedule (Declaration of Jeanne O'Connor dated June 11, 2008 ("O'Connor Decl.") ¶¶ 3, 4). Plaintiff was well aware of O'Connor's functions with respect to her work schedule. For example, on May 23, 2006,

O'Connor requested that Plaintiff complete and return to her AXA's Flexible Work Arrangement Form concerning Plaintiff's work schedule (O'Connor Decl. ¶ 6, Exhibit B).  Plaintiff was further required by O'Connor to notify her when she would be out of the office.  In this regard, Plaintiff sent O'Connor numerous e-mails concerning her work schedule (O'Connor Decl. ¶ 5, Exhibit A).  O'Connor prepared a memorandum entitled "Customer Acquisition, Cross-Sales & Retention:  Our Vision and How We Operate" and distributed it to Plaintiff and others in the Customer Acquisition, Cross-Sales & Retention Group, which contained guidelines for Plaintiff's group relating to work schedules, requests for time-off and procedures for sick days and tardiness.  O'Connor distributed this memorandum to Plaintiff and others in the work group (O'Connor Decl. ¶ 9, Exhibit D).  In addition, on August 15, 2006, O'Connor sent Plaintiff and others in the group an e-mail outlining the vacation request policy (O'Connor Decl. ¶ 10, Exhibit E).

Plaintiff was likewise aware that O'Connor supervised and evaluated her work performance.  On November 28, 2007, Plaintiff requested a meeting with O'Connor (O'Connor Decl. ¶ 12, Exhibit G).  Plaintiff and O'Connor met on December 1, 2006, at which time O'Connor discussed with Plaintiff various issues relating to her work performance and attendance (O'Connor Decl. ¶ 13, Exhibit H).  Plaintiff was further aware as of December 4, 2006 that O'Connor was involved in the formal performance evaluation process (Rosensweig Decl. ¶ 26, Exhibit V).

Finally, contrary to her current claim that she learned this only through AXA's March 11 production (Plaintiff's Memorandum p. 4), Plaintiff was well aware as early as May 2006 that O'Connor's job responsibilities included maintaining Plaintiff's employment records. For example, in May 2006, O'Connor requested that Plaintiff complete and return to O'Connor

forms regarding Plaintiff's work schedule (O'Connor Decl. ¶ 6, Exhibit B). In her proposed Amended Complaint, Plaintiff admits that O'Connor asked her to update an FMLA form (proposed Amended Complaint ¶ 15). In fact, O'Connor repeatedly asked Plaintiff to update her FMLA forms (O'Connor Decl. ¶ 11). As discussed above, Plaintiff submitted documentation concerning her work schedule and absences to O'Connor on a regular basis.

On January 31, 2007, Plaintiff was notified by O'Connor and DeRoche that her employment was being terminated (O'Connor Decl. ¶ 14 and Declaration of Lisa DeRoche dated June 16, 2008 ("DeRoche Decl.") ¶ 8). Thus, Plaintiff clearly knew since January 31, 2007 far more than that O'Connor "may have possibly been somehow involved in her termination," as asserted on page 3 of Plaintiff's Memorandum.

Clearly, Plaintiff knew while still employed by AXA that O'Connor had supervised her work schedule and conditions of her employment, maintained employment records concerning Plaintiff and had involvement in her termination. Thus, Plaintiff had sufficient information to name O'Connor as an individual defendant under the FMLA even prior to filing her initial Complaint on September 26, 2007.

### 2.    Plaintiff knew sufficient facts to name Stern in her original Complaint.

Likewise, Plaintiff was well aware while still employed by AXA that Stern supervised her work, schedule and performance and maintained employment records concerning Plaintiff. On August 25, 2006, Plaintiff advised AXA employee Bernadette Cantela ("Cantela") "now I report to Cindy Stern so she is aware of my schedule." (Rosensweig Decl. ¶ 21, Exhibit Q). From August 2006 until her termination in January 2007, Plaintiff was required to and did notify Stern when she planned to work from home or otherwise be out of the office

(Declaration of Cynthia D. Stern dated June 12, 2008 ("Stern Decl.") ¶ 3, Exhibit A).  Plaintiff was also required to notify Stern of any changes she wished to make to her work schedule (Stern Decl. ¶ 4, Exhibit B).  On November 21, 2006, Stern advised Plaintiff that she did not have any more PTO (Paid Time Off) available (Stern Decl. ¶ 6).  On November 27, 2006, Plaintiff advised Stern that Plaintiff had not yet contacted HR about the need to update Plaintiff's FMLA forms (Stern Decl. ¶ 8).  On January 2, 2007, Plaintiff advised Cantela, "[y]ou may want to check with Cindy Stern regarding my attendance – I filled out the FML forms – I submitted to HR however they have not been signed by a manager as yet."  (Rosensweig Decl. ¶ 22, Exhibit R).  Like O'Connor, Stern repeatedly asked Plaintiff to update her FMLA forms (Stern Decl. ¶ 5).  Finally, on January 5, 2007, Plaintiff sent an e-mail to Stern stating, "[a]s we discussed, from Jan – March I need to work from home on Monday.  Let me know what you need."  (Stern Decl. ¶ 10, Exhibit E).  Stern had previously questioned Plaintiff about this change in her schedule (Stern Decl. ¶ 11).

Plaintiff was also well aware that Stern supervised her with respect to work performance.  On August 23, 2006, O'Connor sent Plaintiff an e-mail advising her that Stern would take over the one-on-one supervisory meetings with Plaintiff that O'Connor had previously conducted (O'Connor Decl. ¶ 7, Exhibit C).   On November 27, Stern met with Plaintiff to discuss various issues relating to Plaintiff's work performance and attendance (Stern Decl. ¶ 7, Exhibit C).  As with respect to O'Connor, Plaintiff was further aware as of December 4, 2006 that Stern was involved in the formal performance evaluation process (Rosensweig Decl. ¶ 26, Exhibit V).

Plaintiff was well aware long before she filed her original Complaint that Stern supervised her work schedule, performance and conditions of employment. Thus Plaintiff had all the information necessary to name Stern as an individual defendant in her original Complaint.

### 3. Plaintiff knew sufficient facts to name DeRoche in her original Complaint.

Plaintiff was aware long before she filed her original Complaint that DeRoche maintained records relating to her employment and was involved in her termination. In June 2006, DeRoche suggested to Plaintiff that she reapply for FMLA leave. DeRoche told Plaintiff that AXA had no record that she was currently approved for FMLA leave, which could expose her to disciplinary action based on her attendance record, and she should promptly reapply for FMLA leave (DeRoche Decl. ¶ 4). On December 14, 2006, Plaintiff advised DeRoche, "I have forms to bring to you let me know when you may have 15 minutes to review." (DeRoche Decl. ¶ 5, Exhibit B). On December 20, 2006, Plaintiff sent an e-mail to DeRoche stating "I would like to meet with you for 10 minutes anyday [sic] this week – I am not in on Friday. I will then give you all the forms – just need to clarify hours to work section with you." (DeRoche Decl. ¶ 6, Exhibit C). Thereafter, Plaintiff submitted a Request for Family Medical Leave Form dated December 14, 2006 to DeRoche (DeRoche Decl. ¶ 7, Exhibit D).

As discussed above, on January 31, 2007, Plaintiff was notified by O'Connor and DeRoche that her employment was being terminated (O'Connor Decl. ¶ 14; DeRoche Decl. ¶ 8). Thus, Plaintiff clearly knew as far back as June 2006 that DeRoche was involved in and maintained records concerning Plaintiff's requests for and receipt of FMLA leaves and knew since January 31, 2007 that DeRoche was involved in her termination. Plaintiff had all the information she needed to name DeRoche as a defendant before she filed her original Complaint.

    **4.**    **Plaintiff knew sufficient facts to name Dennis in her original Complaint.**

Finally, Plaintiff knew as of May 31, 2006 that Dennis headed the entire Customer Marketing Group, in whose Customer Retention & Cross-Sales Department Plaintiff worked, under the supervision of O'Connor. O'Connor in turn reported to Dennis (DeRoche Decl. ¶ 3, Exhibit A). Plaintiff had knowledge of Dennis' involvement in her termination at least as of July 12, 2007, two and one-half months before she filed her original Complaint. On that date, AXA sent a copy of the Customer Marketing Group December 2006 Reorganization Justification Document to Plaintiff's counsel (Rosensweig Decl. ¶ 24, Exhibit T). This document, signed by Dennis, explained the reason Plaintiff's position was being eliminated and why she was not qualified for the new position being created. Plaintiff in fact attached this document as Exhibit B to her original Complaint (Rosensweig Decl. Exhibit A). As with respect to O'Connor, Stern and DeRoche, Plaintiff had all the information she needed to name Dennis as a defendant before she filed her original Complaint.[6]

    **B.**    **Plaintiff Had All The Information Necessary To Assert A Claim Under The New York City Human Rights Law In Her Original Complaint.**

In her proposed Amended Complaint, Plaintiff seeks to assert an entirely new cause of action for associational discrimination under the New York City Human Rights Law §§8-1-1(1)(a) and 8-107(20) against AXA, Dennis, O'Connor, Stern and DeRoche (proposed Amended Complaint, ¶¶ 47 – 54).

On May 29, 2007, almost four months before Plaintiff filed her initial Complaint, Plaintiff's counsel advised AXA that "AXA was put on notice of Megan's diagnosis at the time

---

[6] Plaintiff contends that she learned for the first time in AXA's March 11 document production that each of the proposed individual defendants' job responsibilities related to "determining Plaintiff's rate and method of payment." (Plaintiff's Memorandum p. 4). AXA cannot identify any documents in its production that revealed any such information, nor does Plaintiff allege any facts to support her contention.

Megan had a tracheotomy at the age of one.  It was, therefore, at all times well aware of the details of Megan's condition."  (Rosensweig Decl. ¶ 23, Exhibit S).  Plaintiff's counsel further stated that Plaintiff's "superiors refused to sign the [FMLA] request form which would have allowed Ms. Augustine to be at her daughter's side.  The refusal to sign the form became an issue between Ms. Augustine and her superiors."  Id.  Further, on January 9, Plaintiff's counsel served Initial Disclosures identifying Dennis, O'Connor, Stern and DeRoche as individuals who may have knowledge of, among other things, "Plaintiff's daughter's life threatening health condition." (Rosensweig Decl. ¶ 6, Exhibit D).  Clearly, Plaintiff did not need any documents produced by AXA to be able to allege that AXA or the proposed individual defendants had knowledge of her daughter's medical condition.

Indeed, Plaintiff herself repeatedly advised O'Connor, Stern and DeRoche about her daughter's condition.  Plaintiff left a description of her daughter's illness on O'Connor's chair and sought to discuss it at length with O'Connor on December 1, 2007 (O'Connor Decl. ¶ 11).  On May 23, 2006, Plaintiff submitted a Flexible Work Arrangement Summary to O'Connor which stated, "Due to my 6 year old daughter's health maintenance I arrive after 9 and leave at 4:15 – work is done commuting/evenings/weekends – whatever is required."  (proposed Amended Complaint, Exhibit B).  Additionally, Plaintiff alleges, as a basis for naming O'Connor as an individual defendant, that O'Connor was aware that there was an issue involving Plaintiff and the FMLA because she requested that Plaintiff update a FMLA form (proposed Amended Complaint, ¶ 15).  Obviously, this happened during Plaintiff's employment and she thus knew this months before she filed the original Complaint.

Similarly, Plaintiff knew that Stern and DeRoche were aware of her daughter's medical condition.  On November 27, 2006, Plaintiff sent Stern an e-mail which stated, "I have

not yet contacted HR yet – I just want to read some of the PTO policies again today before I do etc. so my options are clear to me." (Stern Decl. ¶ 8, Exhibit D).  This e-mail related to Stern's repeated requests to Plaintiff to talk to DeRoche, the team's Relationship Manager in Human Resources, about the need to update her FMLA forms.  Plaintiff also notified Stern when she took her daughter to see a specialist.  (Stern Decl. ¶ 12, Exhibit F).  As discussed above, Plaintiff had repeated communications with DeRoche concerning her FMLA forms (DeRoche Decl. ¶¶ 4-7, Exhibits B-D).

Plaintiff cannot now claim that she did not know that AXA, O'Connor, Stern and DeRoche were aware of her daughter's medical condition.  Plaintiff contends that she discovered in AXA's March 11 production that "documents were written expressing hostility about Plaintiff's schedule to care for Megan."  However, she has identified no such documents in either the proposed Amended Complaint or her moving papers.

It is clear that Plaintiff had sufficient information to allege a claim under the New York City Human Rights Law in her initial Complaint.  Her counsel chose, either by conscious decision or inadvertence, not to do so.  Mistake or inadvertence of counsel will not support a finding of good cause. Scott v. City of New York Dep't of Corr., No. 04 Civ. 9638, 2007 WL 4178405, at *4 (S.D.N.Y. Nov. 26, 2007) ("a client assumes the risk of his attorney's actions and is bound even by the consequences of his attorney's negligence") (citations omitted).  Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 447-48 (W.D.N.Y. 1997) (deadline missed by attorney's "inadvertence" not good cause for untimely amendment of complaint); McCormick v. Medicalodges, Inc., No. Civ. A. 05-2429-KHV, 2007 WL 471127, *2-3 (D. Kan. Feb. 8, 2007) (same).

**C.    Plaintiff Had The Documents And Information She Seeks To Use As Exhibits To The Proposed Amended Complaint Prior To Filing Her Original Complaint.**

Prior to filing the original Complaint, Plaintiff had in her possession Exhibits A and B to the proposed Amended Complaint (proposed Amended Complaint, ¶¶ 12, 13). Exhibits F and G were Exhibits to the original Complaint.  Exhibits C and D to the proposed Amended Complaint are attendance sheets produced by AXA with run dates of November 9, 2006 and November 20, 2006, respectively.  Plaintiff alleges in the proposed Amended Complaint that none of the absences reflected on Exhibits C and D were marked as FMLA qualifying  (proposed Amended Complaint, ¶¶ 17, 18).  Contrary to her assertion, Plaintiff did not learn this information through AXA's March 11 production.  Indeed, on January 28 Plaintiff produced to AXA other attendance reports likewise generated by AXA, with run dates of November 14 and January 23, 2007, that contain the same and more information than the reports produced by AXA on March 11 (Rosensweig Decl. ¶ 25, Exhibit U).  Thus, for Plaintiff to claim that she could not have included the allegations set forth in paragraphs 17 and 18 of the proposed Amended Complaint in her original Complaint is patently false. [7]

**V.    CONCLUSION**

Plaintiff seeks to amend her Complaint to assert an additional cause of action and to join additional parties eight months after she filed her Complaint; almost five months after

---

[7] The only Exhibit Plaintiff may not have had in her possession prior to filing her original Complaint is Exhibit E to the proposed Amended Complaint, an e-mail dated November 20, 2006 from O'Connor to Stern asking if Plaintiff had updated her FMLA form.  Although Plaintiff may not have seen this particular e-mail prior to filing her original Complaint, she knew that she was asked to update her FMLA form several times, as she admits in the proposed Amended Complaint (proposed Amended Complaint ¶15).   Thus, this document does not tell Plaintiff anything she needed to, but did not know in order to assert the claims she wishes to assert in the Amended Complaint.

Plaintiff and AXA identified the proposed individual defendants in their respective initial disclosures; three months after the deadline to join new parties and amend the complaint; two and one-half months after AXA produced documents to Plaintiff; and long after she in fact learned the information that would have permitted her to name the parties and assert the claim and allegations she now seeks to add. Under these circumstances, Plaintiff cannot establish that she diligently sought to comply with the Scheduling Order. Therefore, "she lacks the good cause necessary to modify it." Int'l Media Films, Inc., 2008 U.S. Dist. LEXIS 27989, at *15 (S.D.N.Y. April 8, 2008) (citation omitted).

It bears noting that Plaintiff contends that AXA will not be prejudiced by allowing her to belatedly amend her complaint to add additional claims and parties because no depositions have been taken (Plaintiff's Memorandum, p.2). Absence of prejudice to the non-moving party is not alone sufficient to satisfy the good cause requirement of Fed. R. Civ. P. 16(b). Int'l Media Films, Inc., 2008 U.S. Dist. LEXIS 27989, at *6; Estate of Ratcliffe v. Pradera Realty Co., No. 05 Civ. 10272, 2007 WL 3084977 (S.D.N.Y. Oct. 19, 2007). Furthermore, the only reason that no depositions have been taken is that Plaintiff unilaterally cancelled her long-scheduled deposition after AXA refused to consent to amendment of her Complaint (Rosensweig Decl. ¶¶ 13, 14, 18, Exhibit O). On May 30, Plaintiff similarly unilaterally announced that the depositions of the 5 witnesses she wishes to depose, including the 4 proposed individual defendants, would not be scheduled until after the Court rules on this motion (Rosensweig Decl. ¶ 20, Exhibit P). As discussed above, Plaintiff did not make any attempt to seek to take the depositions of any of these individuals until May 12, 2008, 3 months after the deadline to amend her Complaint or join additional parties had passed and 2 months after receiving AXA's March 11 document production (Rosensweig Decl. ¶¶ 6, 9, 10, 17, Exhibit N).

Moreover, contrary to Plaintiff's contentions, AXA will in fact be prejudiced if Plaintiff is permitted to amend her Complaint at this late date. Indeed, AXA has already been prejudiced by expending time and money to prepare for taking Plaintiff's deposition, which was unilaterally abrogated at the last minute by Plaintiff's counsel. Joining additional defendants and adding a new claim under the NYCHRL will require additional written discovery in connection with Plaintiff's new claim for punitive damages, on issues such as Plaintiff's financial circumstances and vulnerability that heretofore have been irrelevant to this case. See, e.g., Zakre v. Norddeutsche Landesbank Girozentrale, 541 F. Supp. 2d 555, 2008 WL 351662, at *6 (S.D.N.Y. Feb. 8, 2008).

For all the foregoing reasons, Plaintiff's Motion to Amend First Complaint should be denied.

Dated: New York, New York
     June 16, 2008

                EPSTEIN BECKER & GREEN, P.C.


                By:  /s/ Dorothy Rosensweig
                     Dorothy Rosensweig
                     Anna A. Cohen

                250 Park Avenue
                New York, New York  10177-1211
                (212) 351-4812
                (212) 661-0989 (fax)
                drosensweig@ebglaw.com
                acohen@ebglaw.com

                Attorneys for Defendant
                AXA Equitable Life Insurance Company