UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

LIZABETH J. AUGUSTINE,                              :

                        **Plaintiff,**      :   **Case No. 07 Civ. 8362 (RWS)(DFE)**

              - against -      :   **REPLY AFFIDAVIT OF**
                                :   **BETSY K. SILVERSTINE, ESQ.**

AXA EQUITABLE LIFE INSURANCE           :   **IN FURTHERANCE OF**
COMPANY,                                            **PLAINTIFF'S MOTION TO**
                                :   **AMEND COMPLAINT**

                  **Defendant.**      x

------------------------------------------------------------- x

      **BETSY K. SILVERSTINE**, states the following to be true under penalties of

perjury:

      1.     I am a member of the bar of the State of New York, duly admitted to

practice before the Southern District of New York, an associate of The Roth Law Firm,

PLLC, attorneys for Plaintiff Lizabeth J. Augustine ("Plaintiff") and submit this Reply

Affidavit in furtherance of Plaintiff's Motion to Amend Complaint.

      2.     Statements in Defendant's Memorandum of Law best demonstrate that

Plaintiff has good cause to amend her Complaint:

> The proposed individual defendants and their believed areas of knowledge
> were named in the initial disclosures of <u>both parties</u> on January 9, ***thus
> giving Plaintiff ample time to seek and take their depositions before the
> February 15 deadline*** to join additional parties or amend the Complaint.
> Yet Plaintiff made no attempt to seek their depositions until May 12, and
> has offered no explanation for this delay.

Memorandum of Law in Opposition to Plaintiff's Motion to Amend First Complaint at 7

(emphasis added). Defendant's argument is nonsensical. Recall that Defendant's

counsel admits she asked for two extensions to respond to Plaintiff's First Request for

Production of Documents and ***did not produce a single document until March 11, 2008!***

At that time, Defendant produced 3538 pages. On April 11, 2008, it produced 166 more

pages. Nonetheless, Defendant asserts that Plaintiff had "ample time" to take depositions

of the individual defendants *before February 15, 2008.* To the contrary, Plaintiff

certainly has good cause to amend her Complaint after that deadline. Further, Dorothy

Rosensweig, Esq. misleads this Court:

> On December 26, 2007, AXA noticed Plaintiff's deposition for February
> 7, 2008. This date was adjourned due to *Plaintiff's failure* to provide
> AXA's counsel with properly executed medical authorizations in
> sufficient time for AXA to obtain the medical records prior to the
> February 7 deposition date.

Declaration of Dorothy Rosensweig, Esq. in Opposition to Plaintiff's Motion to Amend

First Complaint ("Rosensweig Declaration"), ¶ 4 (emphasis added). Ms. Rosensweig's

statement is false. Annexed hereto as Exhibit A are true and correct copies of the

medical authorization forms which were executed by Plaintiff on January 11, 2008 and

delivered to Defendant's counsel soon thereafter. Upon their receipt, however,

Defendant's counsel advised Plaintiff's counsel that physicians sometimes require

original signatures. Indeed, Defendant's counsel apologized for not initially making that

instruction clear. *Plaintiff did not fail to do anything.*

3.      Still, however, Defendants' counsel appears to argue that Plaintiff's

counsel waited an excessive amount of time to amend the Complaint and file the instant

motion. Once again, Ms. Rosensweig misinforms this Court. On April 2, 2008, as a

courtesy, I told Ms. Rosensweig I intended to amend the Complaint. She did not mention

she would object. On April 7, 2008, I wrote her a letter regarding the designation of

certain documents as "Confidential" because I did not want to file exhibits to the

Amended Complaint under seal. Annexed hereto as Exhibit B is a true and correct copy

of that correspondence. On April 18, 2008, I emailed the proposed Amended Complaint to Defendant's counsel. On May 14, 2008, Defendant's counsel emailed to me a stipulation allowing me to file certain "Confidential" documents not under seal. The instant motion was filed on May 29, 2008. Thus, at all times, Plaintiff's counsel's actions were timely.

4.      Plaintiff could not have stated a claim against the individual Defendants in her initial Complaint because she did not know each had the legally requisite level of control over her employment. To state a claim, case law requires that each individual's job relates to Plaintiff's: (i) termination; (ii) schedule or conditions of employment; (iii) rate and method of pay; *and* (iv) maintenance of employment records. Plaintiff was only able to satisfy ***all four factors for each individual*** after receipt of the March 11, 2008 production. By way of example, annexed hereto as <u>Exhibit C</u> is a true and correct copy of email correspondence dated October 12, 2006 and October 13, 2006, which was produced by AXA on March 11, 2008. Those emails, among others, demonstrate that the individual Defendants were all involved in deciding Plaintiff's rate and method of pay. Specifically, O'Connor emailed Dennis and Stern that Plaintiff lent "solid support" on a project. Thereafter, Dennis emailed DeRoche and O'Connor: "[O'Connor], please consult with [DeRoche] on how we do this if you agree this is a good opportunity for monetary reward." DeRoche responded that Plaintiff was eligible for the monetary bonus. In sum, before receiving the March 11, 2008 document production, Plaintiff had no way of knowing who was responsible for her rate and method of pay. ***Nor does Defendant's counsel argue that Plaintiff knew that information before March 11, 2008.*** Further, annexed hereto as <u>Exhibit D</u> is a true and correct copy of email

correspondence demonstrating that O'Connor kept her very own human resources file on Plaintiff, which also contained pay information.

5.      Finally, Defendant argues that Plaintiff could have stated a claim in her initial Complaint under New York City Human Rights Laws. Specifically, Defendant writes: "Plaintiff cannot now claim that she did not know that AXA, O'Connor, Stern and DeRoche were aware of her daughter's medical condition." That is precisely what Plaintiff is claiming. As in most Family Medical Leave Act ("FMLA") and disability discrimination cases, there exists an issue about the *seriousness of the medical condition and whether Defendant had knowledge about said condition and its seriousness.* On March 27, 2008, I wrote the following to Ms. Rosensweig:

> Although Plaintiff took leave under the FMLA to care for her daughter Megan multiple times prior to 2006, Defendant produced no documents regarding the leave requests, decisions or approvals, all of which are responsive to document request number 2. These documents are highly relevant because they demonstrate Defendant is aware of Megan's serious, recurring health condition.

Annexed hereto as Exihibit E is a true and correct copy of that correspondence, ¶ 2. Nonetheless, despite that correspondence, and despite that I reminded Ms. Rosensweig of Defendant's obligation under FMLA §2616(b) to "keep and preserve records," Defendant's counsel responded that "Defendant has not located leave requests prior to 2006." Annexed hereto as Exihibit F is a true and correct copy of correspondence dated April 8, 2008, ¶ 2. In order to allege a "disability" under New York City Human Rights Laws, however, it was necessary to allege Defendant knew Plaintiff's daughter had *not just a medical condition, but an impairment of the respiratory or speech organs.* But as Defedant's counsel is aware, *only after the scheduling order deadline did Plaintiff receive the documentary proof to sustain this allegation.* Specifically, in response to a

4

subpoena served by Defendant, one of Plaintiff's medical providers had a past FMLA form that Plaintiff had submitted to AXA! Annexed hereto as <u>Exhibit G</u> is a true and correct copy of a Certification of Health Care Provider dated December 27, 2002. It enabled Plaintiff to state a claim *because it unequivocally established Plaintiff's daughter has a "disability" under New York City Human Rights Laws, and that Defendant had knowledge of it.* Plaintiff's daughter's physician wrote: "Megan has recurrent respiratory papillomatosis involving the larynx and trachea which recurs monthly and obstructs her airway." That goes far beyond satisfying the good cause requirement to allow Plaintiff to amend her Complaint.

Dated: New York, New York

June 23, 2008

_Betsy Silverstine_

Betsy K. Silverstine

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LIZABETH J. AUGUSTINE,

                           Plaintiff,

             - against -

AXA FINANCIAL, INC. d/b/a
AXA EQUITABLE LIFE INSURANCE CO.

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ECF CASE**

Case No. 07 Civ. 8362 (RWS)(DFE)

**TO:**

## AUTHORIZATION FOR RELEASE OF MEDICAL
## RECORDS TO EPSTEIN, BECKER & GREEN

        I, LIZABETH J. AUGUSTINE, pursuant to applicable federal and state law,
including the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996
("HIPAA"), hereby authorize you, to disclose my medical records and health information
(information that constitutes protected health information as described in HIPAA) to EPSTEIN
BECKER & GREEN,. P.C., 250 Park Avenue, New York, New York 10177, and/or its agents,
and hereby authorize EPSTEIN BECKER & GREEN, P.C. to receive my medical records and
health information from you, and to use and/or disclose my medical records and health
information. **FROM JAN 1, 2000 TO PRESENT**

I hereby authorize the following medical records and health information to be disclosed to EPSTEIN BECKER & GREEN, P.C. and to be used and/or disclosed by EPSTEIN BECKER & GREEN, P.C.: **FROM JAN 1, 2000 TO PRESENT**

> any and all medical records maintained by you and/or your office relating to any medical treatment, services, surgical procedures, diagnosis, symptoms, examination, consultation, confinement, hospitalization, therapy, counseling, billing, consumer claims and/or disability claims, including but not limited to handwritten and typewritten notes, diagnosis, prescription records, prognoses and/or reports, x-rays, tests, invoices for treatment, insurance records, laboratory reports, communications or records of communications and any other documents and information acquired or created by you or your office in attending to me in a professional capacity.

I acknowledge, and hereby consent to such that the released information may contain alcohol and drug treatment records, mental health treatment records, and HIV testing, HIV results or AIDS information.

I understand that EPSTEIN BECKER & GREEN, P.C. is not a health care provider, health plan or health care clearinghouse subject to federal privacy standards and that the medical records and health information disclosed pursuant to this authorization may no longer be protected by federal privacy standards, and that EPSTEIN BECKER & GREEN, P.C. may redisclose my medical records and health information without obtaining my authorization, however, this authorization is given subject to the provision that the health information obtained by this authorization is for use in pending litigation, and shall not be disclosed by EPSTEIN BECKER & GREEN, P.C. for any other purpose.

I understand that I have the right to revoke this authorization at any time provided my revocation is in writing and provided to EPSTEIN BECKER & GREEN, P.C.

I hereby authorize you to accept a copy of this authorization as though it were an original, and acknowledge that you are specifically and expressly released from any liability which would otherwise arise from the release of this information.

I, LIZABETH J. AUGUSTINE, acknowledge that I have had an opportunity to review this form and understand my rights relating to this authorization for the use and disclosure of my medical records and protected health information. By signing this form, I acknowledge that I am confirming that it accurately reflects my wishes.

Dated: __1/11__, 2008

Name: Lizabeth J. Augustine
Social Security No.: _150 -66 - 7359_
Date of Birth:

_6/4/1960_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                     :    **ECF CASE**

LIZABETH J. AUGUSTINE,            :

                     :    Case No. 07 Civ. 8362 (RWS)(DFE)

            Plaintiff,     :

                     :

      - against -        :

                     :

AXA FINANCIAL, INC. d/b/a      :
AXA EQUITABLE LIFE INSURANCE CO.    :

                     :

           Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TO:


## AUTHORIZATION FOR RELEASE OF MEDICAL
## RECORDS TO EPSTEIN, BECKER & GREEN

        I, Lizabeth J. Augustine, parent and guardian of MEGAN McEVOY, pursuant to
applicable federal and state law, including the Privacy Rule of the Health Insurance Portability
and Accountability Act of 1996 ("HIPAA"), hereby authorize you, to disclose Megan McEvoy's
medical records and health information (information that constitutes protected health information
as described in HIPAA) to EPSTEIN BECKER & GREEN,. P.C., 250 Park Avenue, New York,
New York 10177, and/or its agents, and hereby authorize EPSTEIN BECKER & GREEN, P.C.
to receive Megan McEvoy's medical records and health information from you, and to use and/or
disclose my medical records and health information. **FROM  JAN 1, 2000
TO  PRESENT**

I hereby authorize the following medical records and health information to be disclosed to EPSTEIN BECKER & GREEN, P.C. and to be used and/or disclosed by EPSTEIN BECKER & GREEN, P.C.: **FROM JAN 1,2000 TO PRESENT**

> any and all medical records maintained by you and/or your office relating to any medical treatment, services, surgical procedures, diagnosis, symptoms, examination, consultation, confinement, hospitalization, therapy, counseling, billing, consumer claims and/or disability claims, including but not limited to handwritten and typewritten notes, diagnosis, prescription records, prognoses and/or reports, x-rays, tests, invoices for treatment, insurance records, laboratory reports, communications or records of communications and any other documents and information acquired or created by you or your office in attending to Megan McEvoy in a professional capacity.

I acknowledge, and hereby consent to such that the released information may contain alcohol and drug treatment records, mental health treatment records, and HIV testing, HIV results or AIDS information.

I understand that EPSTEIN BECKER & GREEN, P.C. is not a health care provider, health plan or health care clearinghouse subject to federal privacy standards and that the medical records and health information disclosed pursuant to this authorization may no longer be protected by federal privacy standards, and that EPSTEIN BECKER & GREEN, P.C. may redisclose Megan McEvoy's medical records and health information without obtaining my authorization, however, this authorization is given subject to the provision that the health information obtained by this authorization is for use in pending litigation, and shall not be disclosed by EPSTEIN BECKER & GREEN, P.C. for any other purpose.

I understand that I have the right to revoke this authorization at any time provided my revocation is in writing and provided to EPSTEIN BECKER & GREEN, P.C.

NY:2212256v3

I hereby authorize you to accept a copy of this authorization as though it were an original, and acknowledge that you are specifically and expressly released from any liability which would otherwise arise from the release of this information.

I, LIZABETH J. AUGUSTINE, acknowledge that I have had an opportunity to review this form and understand my rights relating to this authorization for the use and disclosure of Megan McEvoy's medical records and protected health information. By signing this form, I acknowledge that I am confirming that it accurately reflects my wishes.

Dated: _____ |1|11_____ , 2008

_____Lizabeth Jaugustine_____

Name: Lizabeth J. Augustine
Parent and Guardian of Megan McEvoy
Social Security No.: 151 - 06 - 2516
Date of Birth: 3/31/2000

# The Roth Law Firm, PLLC

545 Fifth Avenue, Suite 960
New York, New York 10017
Tel.: (212) 542-8882 Facsimile: (212) 542-8883

April 7, 2008

**Via Electronic Mail**
Dorothy Rosensweig, Esq.
Epstein, Becker & Green, P.C.
250 Park Avenue
New York, New York 10177

Re:     **Augustine v. AXA Financial, Inc.**

Dear Dotty:

The purpose of this letter is to object to Defendant's designation as "Confidential" certain documents produced in response to Plaintiff's First Request for Production to Defendant. We make this objection prior to making our application to the Court.

On March 12, 2008, Plaintiff's counsel received 3,538 documents on a CD from Defendant's counsel, *all of which were marked "Confidential."* On March 27, 2008, I sent a letter to you detailing which of Defendant's responses were substantively deficient. In addition, that letter addressed Plaintiff's responses which you believed were substantively insufficient. Thereafter, upon further review of Defendant's document production, it appears that Defendant wrongfully marked non-confidential documents as "Confidential."

Specifically, Paragraph three of the Stipulation and Order Governing the Protection and exchange of Confidential Material ("Confidentiality Order"), which was drafted by your firm, provides:

For purposes of this Order, information considered to be confidential or proprietary includes, but is not limited to: (1) payroll, compensation and personnel records of current and former employees of defendant; (2) business and marketing policies, procedures, plans, and strategies, (3) personnel information or policies; (4) defendant's financial, commercial or other proprietary information not readily available to the general public; and (5) medical records of Plaintiff and/or her daughter Megan McEvoy (collectively "Confidential Material").

Below is a table listing the bates numbers of the documents that are not subject to the Confidentiality Order, and, therefore, were improperly marked "Confidential."

| NO. | BATES NO. |
| --- | --- |
| 1 | 25 |
| 2 | 26 |
| 3 | 27 |

| 4 | 38 |
|---|-----|
| 5 | 44 |
| 6 | 45 |
| 7 | 122 |
| 8 | 124 |
| 9 | 125 |
| 10 | 440 |
| 11 | 452 |
| 12 | 530 |
| 13 | 533 |
| 14 | 539 |
| 15 | 597 |
| 16 | 598 |
| 17 | 643 |
| 18 | 644 |
| 19 | 645 |
| 20 | 646 |
| 21 | 857 |
| 22 | 873 |
| 23 | 886 |
| 24 | 887 |
| 25 | 888 |
| 26 | 1129 |
| 27 | 1134 |
| 28 | 1206 |
| 29 | 1310 |
| 30 | 1311 |
| 31 | 1828 |
| 32 | 1834 |
| 33 | 2040 |
| 34 | 2088 |
| 35 | 2090 |
| 36 | 2091 |
| 37 | 2153 |
| 38 | 2233 |
| 39 | 3037 |

Please immediately produce to us the above documents with their original bate stamp numbers and without the designation "Confidential." Otherwise, pursuant to the Confidentiality Order, we will apply to the Court.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

*Betsy Silverstine*

Betsy K. Silverstine

cc:     Anna Cohen, Esq.

2

**EXHIBIT**

C

From: Jeanne O'Connor
Sent: Friday, October 13, 2006 9:02:14 AM
To: James C Dennis
CC: Barbara Goodstein; Lisa DeRoche
Subject: Re: Fw: Good News -- Update on Opt Ins for 2 Online Campaigns

I wholeheartedly agree -- would send a great message to all of CMG.
Jeanne O'Connor
VP, Customer Acquisition, Cross-Sales & Retention
Customer Marketing Group
AXA Equitable/1290 Ave. of the Americas, 7th fl./New York, NY 10104
Phone: (212) 314-2955/Fax: (212) 707-7775
jeanne_o'connor@mony.com


        James C Dennis
        10/12/2006 06:28 PM
                To: Lisa DeRoche/NY/AXA-Financial/Equitable@Axa-Equitable, Jeanne
O'Connor/Distribution Communication/MONY@AXA-EQUITABLE
                cc: Barbara Goodstein@ExchMail
                Subject: Fw: Good News -- Update on Opt Ins for 2 Online Campaigns

Lisa
The team members listed in Jeanne's note are the people my spot award
question regarded.
Jeanne, please consult with Lisa on how we do this if you agree this is a
good opportunity for monitary reward and public recognition. Jc


    From: Jeanne O'Connor
    Sent: 10/12/2006 03:47 PM
    To: James Dennis
    Cc: Cynthia Stern
    Subject: Good News -- Update on Opt Ins for 2 Online Campaigns

JC/Barbara:

As of this afternoon, our 2 inaugural opt-in campaigns being tested with the
field via the new Letter Xpress Web site are seeing good participation.  RIFL
in NY stands at 45% and Client Review is at 47% in terms of opt in for
eligible agents.  These numbers are approaching RBG's letter campaign
participation numbers and their Web portal has been in existence for a few
years.  Final email reminders are going out today and we can expect some
additional takers before the opt in period ends on 10/15.  We'll be carefully
tracking cross-sales for opt in vs. non-opt in agents.

As you know, Maud Suarez and Cindy Stern have been working round the clock
(including last weekend) to make this happen and to handle a significant
volume of "help desk" type calls from the field.  Liz Augustine of our team
has lent solid support and MaryEllen Keenan also pitched in, testing the
system and putting in extra hours to hit our system launch date of 10/2.
I'm very proud of everyone's efforts to get us off the ground quickly and,
especially, to show that there is demand for the kinds of programs that we
outlined in the marketing plan.

Jeanne O'Connor
VP, Customer Acquisition, Cross-Sales & Retention
Customer Marketing Group
AXA Equitable/1290 Ave. of the Americas, 7th fl./New York, NY 10104
Phone: (212) 314-2955/Fax: (212) 707-7775
jeanne_o'connor@mony.com

Confidential                                                    AXA/LA001310

From: Lisa DeRoche
Sent: Friday, October 13, 2006 9:28:59 AM
To: Jeanne O'Connor
CC: James C Dennis
Subject: Re: Fw: Good News -- Update on Opt Ins for 2 Online Campaigns

Maud & Cynthia are not eligible for spot bonus awards however, Liz and
Maryellen are eligible. Let me know what you had in mind regarding public
recognition other than a note to the entire team or some other form of reward
which is quite scarce here. Let's talk about it.

Thanks.

Lisa A. DeRoche
HR Relationship Manager
212-314-2810 Phone
212-707-1675 Fax
lisa.deroche@axa-equitable.com


        Jeanne O'Connor

        10/13/2006 09:02 AM

                To: James C Dennis/NY/AXA-Financial/Equitable@AXA-Equitable
                cc: Barbara Goodstein@ExchMail, Lisa
DeRoche/NY/AXA-Financial/Equitable@AXA-EQUITABLE
                Subject: Re: Fw: Good News -- Update on Opt Ins for 2 Online Campaigns

I wholeheartedly agree -- would send a great message to all of CMG.
Jeanne O'Connor
VP, Customer Acquisition, Cross-Sales & Retention
Customer Marketing Group
AXA Equitable/1290 Ave. of the Americas, 7th fl./New York, NY 10104
Phone: (212) 314-2955/Fax: (212) 707-7775
jeanne_o'connor@mony.com


        James C Dennis
        10/12/2006 06:28 PM
                To: Lisa DeRoche/NY/AXA-Financial/Equitable@Axa-Equitable, Jeanne
O'Connor/Distribution Communication/MONY@AXA-EQUITABLE
                cc: Barbara Goodstein@ExchMail
                Subject: Fw: Good News -- Update on Opt Ins for 2 Online Campaigns

Lisa
The team members listed in Jeanne's note are the people my spot award
question regarded.
Jeanne, please consult with Lisa on how we do this if you agree this is a
good opportunity for monitary reward and public recognition. Jc

    From: Jeanne O'Connor
    Sent: 10/12/2006 03:47 PM
    To: James Dennis
    Cc: Cynthia Stern
    Subject: Good News -- Update on Opt Ins for 2 Online Campaigns

JC/Barbara:

As of this afternoon, our 2 inaugural opt-in campaigns being tested with the
field via the new Letter Xpress Web site are seeing good participation. RIFL
in NY stands at 45% and Client Review is at 47% in terms of opt in for
eligible agents. These numbers are approaching RBG's letter campaign
participation numbers and their Web portal has been in existence for a few



EXHIBIT

Exhibit

D



**Jeanne O'Connor**
Jeanne_O'Connor
@mony.com

11/08/2006 03:29 PM

To: Lisa DeRoche/NY/AXA-Financial/Equitable@Axa-Equitable
cc:
Subject: Liz Augustine Base

Hi Lisa:
Cindy Stern's out this week and I gave her my HR file for Liz...can you let me know Liz's current grade & base?  Thanks.

Jeanne O'Connor
VP, Customer Acquisition, Cross-Sales & Retention
Customer Marketing Group
AXA Equitable/1290 Ave. of the Americas, 7th fl./New York, NY 10104
Phone: (212) 314-2955/Fax: (212) 707-7775
jeanne_o'connor@mony.com

AXA/LA000887



# The Roth Law Firm, PLLC

545 Fifth Avenue, Suite 960
New York, New York 10017
Tel.: (212) 542-8882 Facsimile: (212) 542-8883

March 27, 2008

**Via Electronic Mail**
Dorothy Rosensweig, Esq.
Epstein, Becker & Green, P.C.
250 Park Avenue
New York, New York 10177

Re:    <u>Augustine v. AXA Financial, Inc.</u>

Dear Dotty:

Defendant's Responses to Plaintiff's First Request for Production are deficient in the following ways. After describing the deficiencies, I will address your letter of March 3, 2008.

## <u>Defendant's Responses to Plaintiff's First Request for Production are Deficient</u>

### DOCUMENT REQUEST NUMBER 2

Although Plaintiff took leave under the FMLA to care for her daughter Megan multiple times prior to 2006, Defendant produced no documents regarding the leave requests, decisions or approvals, all of which are responsive to document request number 2. These documents are highly relevant because they demonstrate Defendant is aware of Megan's serious, recurring health condition.

### DOCUMENT REQUEST NUMBER 6

Defendant states there are no responsive documents. AXA/LA 875, however, is responsive. In addition, because Defendant withheld documents regarding our document request number 2, it is not unreasonable to believe that Defendant is similarly withholding additional documents relating to Plaintiff's previous FMLA requests and any disputes relating to said requests.

### DOCUMENT REQUEST NUMBER 17

Defendant did not produce Defendant's position elimination policy or performance elimination policy.

## <u>Contrary to your letter of March 3, 2008, Plaintiff's Responses are Sufficient</u>

### FRCP 34

Defendant correctly interprets FRCP 34. A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the request.

As Plaintiff is an individual, she cannot maintain her documents "in the usual course of business." Therefore, our firm did organize and label the documents. Specifically, the documents appear consecutively to correspond to your requests. In other words, the documents responsive to request number 1 appear before the documents responsive to request number 2, which appear before the documents responsive to request number 3 and so on. Regarding labeling, the documents are also bate stamped by our firm. Unlike your firm's document production, all of our production was prepared internally.

## GENERAL OBJECTIONS

Defendant maintains that objecting to producing documents on the grounds that the documents are already in Defendant's possession is not a proper ground for an objection. Although technically correct, this objection is akin to a burdensome objection and is uniquely suitable when an individual is suing a large corporation. That notwithstanding, no documents have been withheld on this basis. To the extent that any documents have been withheld on the grounds of privilege, a privilege log will be produced. Alternatively, counsel will confirm that no documents have been withheld on the basis of privilege.

## TIME LIMITATIONS

In Defendant's letter, it appears that Defendant admits agreeing to certain time limitations, yet denies agreeing to others. In addition, Defendant's responses repeatedly reference the agreements made "in counsel's telephone conference on January 15, 2008." In sum, it appears that Defendant has a rather convenient memory in regard to said conference. Plaintiff's position is that Plaintiff has complied with all representations made by Plaintiff in the January 15, 2008 telephone conference.

## DOCUMENT REQUEST NUMBERS 8, 9, 45

Defendant makes the following entirely inaccurate statement: "Plaintiff now refuses to produce any calendars, diaries, appointment books or other documents responsive to these requests." Plaintiff's counsel has repeatedly told Defendant's counsel that Plaintiff does not have any calendars, diaries or appointment books from this time period. As clearly stated in Plaintiff's responses, responsive documents to document request numbers 8, 9 and 45 that are in Plaintiff's possession have been produced.

## DOCUMENT REQUEST NUMBER 11

As stated in Plaintiff's responses, responsive documents to document request number 11 that are in Plaintiff's possession have been produced.

## DOCUMENT REQUEST NUMBERS 7, 20, 23, 24, 27-35, 37, 38

Defendant does not have any additional responsive documents to document requests 7, 20, 23, 24, 27-35, 37 and 38.

## DOCUMENT REQUEST NUMBER 42

We will produce documents concerning our fee arrangement with Plaintiff after we have had a reasonable time to review the authority cited by Defendant on this issue.

**DOCUMENT REQUEST NUMBER 46**

Defendant does not have any additional responsive documents to document request 46. At this time, Plaintiff's search of her home computer is complete. This shall confirm that Plaintiff will preserve her home computer and hard drive so that Defendant may, if it deems necessary, seek a court order to permit examination by a forensic expert. That said, however, rummaging through our client's personal computer seems particularly intrusive. As I have mentioned in previous correspondence, to attain that court order, you will have to establish to the court, at a minimum, a reasonable basis that Plaintiff's family computer contains something Defendant would have fired her for.

After you have had a chance to review this correspondence, please call me so we can discuss whether to set a hearing date or try to resolve the foregoing.

Sincerely,

Betsy K. Silverstine

cc:     Lizabeth Augustine
        Anna Cohen, Esq.

3



## EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW
250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
212.351.4500
FAX: 212.661.0989
EBGLAW.COM

DOROTHY ROSENSWEIG
TEL: 212.351.4798
FAX: 212.878.8798
DROSENSWEIG@EBGLAW.COM

April 8, 2008

**Via Electronic Mail**

Betsy K. Silverstine, Esq.
The Roth Law Firm PLLC
545 Fifth Avenue, Suite 960
New York, New York 10017-3609

> Re:  Lizabeth J. Augustine against AXA Financial, Inc.
> d/b/a AXA Equitable Life Insurance Co.
> Case No. 07 Civ. 8362 (RWS)(DFE)

Dear Betsy:

I write in response to your correspondence of March 27, 2008 and our telephone conversation of April 2, 2008 regarding the parties' discovery responses.

## I.    Defendant's Responses to Plaintiff's Document Requests

### A.    Plaintiff's Document Request Number 2

As I advised you on April 2, contrary to your assertions, Defendant has not withheld any documents responsive to this request. After a diligent search of documents in its possession, custody and control, the Defendant has not located Plaintiff's leave requests prior to 2006.

### B.    Plaintiff's Document Request Number 6

Request No. 6 seeks documents relating to or reflecting records of any dispute between Plaintiff and Defendant regarding FMLA leave or designation of leave as FMLA leave. AXA/LA 000875 relates to Defendant's request that Plaintiff update her Family Medical Leave forms. Again, your assertion as fact that Defendant has withheld responsive documents is

ATLANTA  •  CHICAGO  •  DALLAS  •  HOUSTON  •  LOS ANGELES  •  MIAMI
NEWARK  •  NEW YORK  •  SAN FRANCISCO  •  STAMFORD  •  WASHINGTON, D.C.

NY:2504891v4        EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY

Betsy K. Silverstine, Esq.
April 8, 2008
Page 2

unsupported, untrue, and not appreciated.    Defendant has not withheld any responsive documents.

### C.    Plaintiff's Document Request Number 17

Contrary to your assertion, Defendant has produced its Job Abolishment and Severance policy. See Bates Nos. AXA/LA 000419-000425.

## II.    Plaintiff's Responses to Defendant's Document Requests

### A.    FRCP 34

In your March 27 letter, you state "... [O]ur firm did organize and label the documents. Specifically, the documents appear consecutively to respond to your requests." This information, without more, is not helpful and does not satisfy Plaintiff's obligation under Rule 34. Please advise us at your earliest convenience which documents produced by Plaintiff are responsive to each particular request.

### B.    General Objections

In our April 2 conversation, you stated that you were not aware of any documents you have withheld as privileged.  Please confirm that in fact Plaintiff has not withheld any responsive documents on the basis of privilege.

### C.    Time Limitations

I have detailed notes reflecting the time limitations agreed to by Richard Roth and me during our January 15, 2008 telephone call, in which you did not participate.  These limitations are accurately set forth in my March 3, 2008 letter to you. However, as I advised you on April 2, any disagreement we may have as to what was agreed to on January 15 is irrelevant unless Plaintiff has, in fact, withheld documents responsive to Defendant's requests nos. 4-7, 10, 16-39 and 43-46 based on Plaintiff's view of the agreed-upon time limitations. Please confirm that Plaintiff in fact has not withheld any documents on this basis.  If Plaintiff has withheld documents on this basis, she should promptly produce them.

### D.    Defendant's Document Request Numbers 8, 9, 45

Your March 27 letter states "responsive documents to document requests number 8, 9 and 45 that are in Plaintiff's possession have been produced."  In addition to documents in her possession, Plaintiff is obligated to produce documents in the possession, custody or control of her attorneys, agents, investigators or any third party or parties to whom she has surrendered possession, custody or control who are acting on Plaintiff's behalf, who have otherwise obtained possession, custody or control, or who, upon Plaintiff's request, would surrender possession,

Betsy K. Silverstine, Esq.
April 8, 2008
Page 3

custody or control to Plaintiff.  If any such responsive documents exist, Plaintiff should immediately produce them.  If there are no such responsive documents, please confirm this in writing.

### E.   Defendant's Document Request Number 11

As previously requested, please advise us which documents produced by Plaintiff are responsive to document request number 11.

### F.   Defendant's Document Request Number 42

By letter dated March 3, 2008, we provided you with authority that establishes Defendant's entitlement to the documents sought by this request.  You have had a full month to review same.  Accordingly, we request that Plaintiff immediately produce such documents.

If you have any questions, please contact me.

Very truly yours,

Dorothy Rosensweig

Dorothy Rosensweig


EXHIBIT
G

THU 13:13 FAX 2127071816                                RDO                                    ☒ 002

**Certification of Health Care Provider**
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

*(When completed, this form goes to the employee, not to the Department of Labor.)*

1. Employee's Name
   Lizabeth J. Agustine

2. Patient's Name *(If different from employee)*
   Megan A. McEvoy

OMB No.: 1215-0181
Expires:  06/30/02

3. Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition¹ qualify under any of the categories described? If so, please check the applicable category.

(1) _____   (2) _____   (3) _____   (4) ✓   (5) ✓   (6) _____, or None of the above _____

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:

Megan has recurrent respiratory papillomatosis involving the larynx + trachea which recurs monthly + obstructs her airway. She is getting special medical treatments 9 months + is currently traveling to Denver, Co for this

a. State the approximate date the condition commenced, and the probable duration of the patient's present incapacity² if different):

~ mos 9 age, possibly until puberty ~ adulthood

b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in item 6 below)?

yes

If yes, give the probable duration:    Until disease abates

c. If the condition is a chronic condition (condition #4) or **pregnancy**, state whether the patient is presently incapacitated² and the likely duration and frequency of episodes of incapacity².

No incapacitation but needs close airway monitoring + parents need to accompany her for treatments

Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

¹"Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Page 1 of 4

Form WH-380
Revised December 1998

☑003

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments.

*Possibly 12 per year for next 10-20 years*

If the patient will be absent from work or other daily activities because of treatment on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

*Mother may need 3-7 days off around each treatment*

b. If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments:

*Dr Nigel Pashley, Denver Co. Pediatric otolaryngologist*

c. If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

*multi trips to operating room excision g lesions*

7. a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

*NA*

b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions? If yes, please list the essential functions the employee is unable to perform:

*NA*

c. If neither a nor b applies, is it necessary for the employee to be absent from work for treatment?

*NA*

Page 2 of 4

RDO

8. a. If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

*All of the above*

b. If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

*yes*

c. If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

*Pt needs care around each treatment for 3-7 days*

_____
Signature of Health Care Provider

Address  *3959 Broadway, Rm 501 N*
_____
*NY NY    10032*

Type of Practice  *Pediatric Otolaryngology*

Telephone Number  *212-305-8933*

Date  *12/27/01*

---

**To be completed by the employee needing family leave to care for a family member:**
State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____
Employee Signature

_____
Date

A "Serious Health Condition" means an illness, injury impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

   Inpatient care (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

   (a) A period of incapacity[2] of more than three consecutive calendar days (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

   (1) Treatment[3] two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

   (2) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment[4] under the supervision of the health care provider.

3. Pregnancy

   Any period of incapacity due to pregnancy, or for prenatal care.

4. Chronic Conditions Requiring Treatments

   A chronic condition which:

   (1) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

   (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

   (3) May cause episodic rather than a continuing period of incapacity[2] (*e.g.*, asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-Term Conditions Requiring Supervision

   A period of incapacity[2] which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

   Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity[2] of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

## Public Burden Statement

We estimate that it will take an average of 10 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.