UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

LIZABETH J. AUGUSTINE,

                Plaintiff,          07 Civ. 8362

   -against-                            OPINION

AXA FINANCIAL, INC. d/b/a
AXA EQUITABLE LIFE INSURANCE CO.,

                Defendant.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        THE ROTH LAW FIRM, PLLC
        545 Fifth Avenue, Suite 960
        New York, NY  10017
        By:  Betsy K. Silverstine, Esq.

        Attorneys for Defendant

        EPSTEIN BECKER & GREEN, P.C.
        250 Park Avenue
        New York, NY  10177-1211
        By:  Dorothy Rosensweig, Esq.
             Anna A. Cohen, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/24/08

**Sweet, D.J.**

Plaintiff, Lizabeth J. Augustine ("Augustine" or the "Plaintiff") has moved pursuant to Rule 15(a) and 16(b), Fed. R. Civ. P., to amend her Complaint against defendant AXA Equitable Life Insurance Company ("AXA" or the "Defendant") to add individual defendants James C. Dennis ("Dennis"), Jeane O'Connor ("O'Connor"), Cynthia Stern ("Stern"), and Lisa DeRoche ("DeRoche"), and an additional cause of action under New York City Administrative Code §§ 8-107(1)(a) and 8-107(20) ("NYCAC"). Upon the facts and conclusions set forth below, the motion to amend to add the individual defendants will be denied and the motion to add a cause of action under the NYCAC will be granted.

## I.   PRIOR PROCEEDINGS

On September 26, 2007, Augustine filed her original complaint in this action alleging violations of the Family and Medical Leave Act ("FMLA"). On November 16, 2007, AXA filed its Answer.

On January 9, 2008, AXA served its Initial Disclosures pursuant to Rule 26(a), identifying Dennis, O'Connor, Stern, and DeRoche as individuals who may have discoverable information

concerning: (i) Plaintiff's job duties, responsibilities, performance and attendance; (ii) AXA's FMLA leave request policies and procedures; and (iii) AXA's Customer Marketing Group Reorganization and elimination of Plaintiff's position.

The same day, Plaintiff served her initial Disclosures on AXA, identifying Dennis, O'Connor, Stern, and DeRoche as individuals who may have knowledge concerning, among other things: (i) Plaintiff's allegedly exemplary job performance and history; (ii) AXA's FMLA policies and procedures and failure to respond to Plaintiff's FMLA request; (iii) Plaintiff's daughter's life threatening health condition; and (iv) the December 20, 2006 "Reorganization Justification Document" that "eliminated and replaced" Plaintiff's position.

On January 10, 2008, Plaintiff served her First Set of Interrogatories on AXA. On January 15, AXA's counsel advised Plaintiff's counsel that all but No. 8 of Plaintiff's interrogatories were in violation of Rule 33.3 and accordingly AXA would not respond to them other than to assert objections. Interrogatory No. 8 requested the identity of all individuals who participated in the decision-making process to terminate Plaintiff's employment with AXA.

On January 14, 2008, the parties' Joint Rule 26(f) Report and Proposed Joint Discovery Plan (the "Scheduling Order") was so ordered. Paragraph 3 set the deadline to amend pleadings, including joinder of additional parties, as February 15, 2008; the close of discovery as August 31, 2008; and the due date for summary judgment motions or, if no such motions are made, the pretrial order, as October 31, 2008. Paragraph 7 stated that "[a] scheduling order will be modified by the Court only upon a showing of good cause. Fed. R. Civ. P. 16(b)."

On February 26, 2008, AXA identified relevant individuals under Interrogatory No. 8 as Dennis, O'Connor and Stern.

On March 11, 2008, AXA produced documents in response to Plaintiff's First Request for Production of Documents having received extensions of time to produce from Augustine. On April 7 and 9, 2008, Plaintiff objected to the designation as "confidential" of 53 pages of documents in AXA's document production.

On April 10, 2008, AXA's counsel served an Amended Notice of Deposition to take Plaintiff's deposition on May 29.

4

On April 18, 2008, Plaintiff's counsel emailed to AXA's counsel a proposed First Amended Complaint ("Amended Complaint"). On May 12, 2008, AXA advised Plaintiff that it would not consent to the proposed amendment of the Complaint.

On Friday, May 23, 2008, Plaintiff cancelled Plaintiff's May 29 deposition because AXA would not consent to the amendment of the Complaint. On May 29, 2008, Plaintiff filed the instant motion to amend the Complaint.

## II.   THE APPLICABLE STANDARD

Motions for leave to amend pleadings are initially governed by Fed. R. Civ. P. 15(a)'s relatively lenient standard providing that leave to amend a complaint "shall be freely given when justice so requires." When however, as here, a motion for leave to amend is brought after the time period for amending pleadings has expired pursuant to a court's Scheduling Order, Rule 16(b)'s more stringent "good cause" standard governs. Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000); see also Kassner v. 2d Avenue Deli., Inc., 496 F.3d 229 (2d Cir. 2007) (holding that "good cause" standard governs notwithstanding Rule 15(a)(1)); Fed. R. Civ. P. 16(b)(4) ("A

schedule may be modified only for good cause and with the judge's consent.").

"The decision to grant leave in such circumstances is left to the sound discretion of the district court." Dos Santos v. Terrace Place Realty, Inc., 433 F. Supp. 2d 326, 336 (S.D.N.Y. 2006). The primary consideration is whether the moving party can demonstrate diligence. See Kassner, 496 F.3d at 244; Parker, 204 F.3d at 340. The Court "may [also] consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Kassner, 496 F.3d at 244. However, the absence of prejudice to a nonmoving party does not alone fulfill the good cause requirement of Rule 16(b). Estate of Ratcliffe v. Pradera Realty Co., 05 Civ. 10272 (JFK), 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007).

**IV.   DISCUSSION**

**A.   Plaintiff Has Not Shown Good Cause for the Late Joinder of Additional Defendants**

Plaintiff's proposed Amended Complaint seeks to join Dennis, a Senior Vice President who headed the Customer

6

Marketing Group in which Plaintiff worked, Plaintiff's supervisors O'Connor and Stern, both Vice Presidents, and DeRoche, a Human Resources Relationship Manager, as individual defendants on her FMLA and intentional infliction of emotional distress claims (the first, second and fourth causes of action in the proposed Amended Complaint). Plaintiff would also name the four individuals as defendants on a new claim under the NYCAC.

According to the Plaintiff, prior to AXA's document production, she was only "aware of the individuals' job titles, and that each may have possibly been somehow involved in her termination" and it would have been "impossible" to amend her Complaint to name the individuals as defendants by the February 15, 2008 deadline in the Scheduling Order. Pl. Mem. 3-4. Plaintiff asserts that "[t]o state a claim, the case law requires that each individual's job relates to Plaintiff's: (i) termination; (ii) schedule or conditions of employment; (iii) rate and method of pay; **and** (iv) maintenance of employment records," Pl. Reply 3 (emphasis in original), and that she was only able to satisfy all four factors for each individual after the March 11, 2008 production of documents.

Plaintiff does not specify the "case law" that establishes this alleged heightened pleading standard for FMLA claims against individual defendants, and the Court is aware of none. At most, Johnson v. A.P. Prods., Ltd., 934 F. Supp. 625 (S.D.N.Y. 1996), relied on by Plaintiff in her original memorandum of law, stands for the proposition that a plaintiff must allege that an individual defendant had "substantial control over the aspect of employment alleged to have been violated." Id. at 629. In Johnson, the Honorable Barrington D. Parker dismissed plaintiff's FMLA claim because the complaint "[did] not allege in any manner that [individual defendant] exercised any control over [plaintiff's] ability to take a leave of absence or her termination." Id.

The four factors identified by the Plaintiff are recited by Johnson, see id., as part of the "economic reality" test that governs the question of "whether, as a matter of economic reality, an entity is an employer for purposes of the FLSA." Id., quoting Rubin v. Tourneau, Inc., 797 F. Supp. 247, 252 (S.D.N.Y. 1992). The courts have applied the same test to the FMLA because its definition of "employer" tracks that of the FLSA. Cf. 29 U.S.C. § 2611(4)(A)(ii) (defining "Employer" as "includ[ing] any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer

8

. . . .") with 29 U.S.C. § 203(d) (defining "Employer" as "includ[ing] any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."); see also Johnson, 934 F. Supp. at 628 (looking to the FLSA for guidance in construing the term "employer" in the FMLA). The economic reality test is a factual inquiry that does not bear on the sufficiency of pleadings. As stated by the Court of Appeals for the Second Circuit,

> No one of the four factors standing alone is dispositive. . . .  Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive. Since economic reality is determined based upon *all* the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition.

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (emphasis in original). The relevant inquiry at this stage of the proceedings is not whether Augustine possessed sufficient facts to satisfy the "economic reality" test before the deadline for amending her complaint, but whether she was in possession of sufficient facts to plead that the proposed individual defendants had substantial control over the aspects of employment alleged to have been violated. See Johnson, 934 F. Supp. at 629; Holt v. Welch Allyn, Inc., 05 Civ. 1135 (RSP/GJD), 1997 WL 210420, at *2 (N.D.N.Y. Apr. 15, 1997) (holding that liability under the FMLA extends "'to all those who controlled

in whole or in part [the plaintiffs'] ability to take [] leave[s] of absence and return to [their] position[s]'" (alterations in original) (quoting Johnson, 934 F. Supp. at 629 (quotation omitted))); Freemon v. Foley, 911 F. Supp. 326, 331 (N.D. Ill. 1995) (holding that the same standard governs the FMLA and the FLSA, and that "even if a defendant does not exercise control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment alleged to have been violated, the FLSA will apply to that individual").

In light of this standard, Plaintiff has not demonstrated a diligent effort to comply with the Scheduling Order. Plaintiff has alleged that the proposed individual defendants refused to grant Plaintiff qualified leave, see Amended Complaint ¶¶ 31-33, and terminated her in violation of the FMLA. See id. ¶ 34. AXA has submitted sworn declarations from O'Connor, Stern, and DeRoche and exhibits demonstrating Plaintiff's knowledge of the proposed individual defendants' control over Plaintiff's ability to take leave and her termination. Plaintiff has not disputed any of these factual submissions with regard to her knowledge of such facts and resulting ability to amend the Complaint to include the proposed

individual defendants prior to the deadline for amending the Complaint.

From May 2006 through August 2006, Plaintiff reported directly to O'Connor, and during that time O'Connor supervised Plaintiff's work and work schedule. O'Connor Decl. ¶¶ 3, 4. On May 23, 2006, O'Connor requested that Plaintiff complete and return to her AXA's Flexible Work Arrangement Form concerning Plaintiff's work schedule. Id. ¶ 6, Ex. B. Plaintiff was required to notify O'Connor when she would be out of the office, and sent O'Connor numerous emails in this regard. Id. ¶ 5, Ex. A. O'Connor prepared a memorandum containing guidelines for Plaintiff's group relating to work schedules, requests for time-off and procedures for sick days and tardiness, and distributed it to Plaintiff and others in the Customer Acquisition, Cross-Sales & Retention Group. Id. ¶ 9, Ex. D. On August 15, 2006, O'Connor sent Plaintiff and others in the group an email outlining the vacation request policy. Id. ¶ 10, Ex. E.

On November 28, 2007, Plaintiff requested a meeting with O'Connor, Id. ¶ 12, Ex. G, and Plaintiff and O'Connor met on December 1, 2006, to discuss various issues relating to Plaintiff's work performance and attendance. Id. ¶ 13, Ex. H. Plaintiff was aware as of December 4, 2006 that O'Connor was

11

involved in AXA's formal performance evaluation process.  Decl. of Dorothy Rosensweig ("Rosensweig Decl.") ¶ 26, Ex. V.

On January 31, 2007, Plaintiff was notified by O'Connor and DeRoche that her employment was being terminated. O'Connor Decl. ¶ 14 and Decl. of Lisa DeRoche ("DeRoche Decl.") ¶ 8.

On August 23, 2006, O'Connor sent Plaintiff an email advising her that Stern would take over the one-on-one supervisory meetings with Plaintiff that O'Connor had previously conducted.  O'Connor Decl. ¶ 7, Ex. C.  On August 25, 2006, Plaintiff advised AXA employee Bernadette Cantela ("Cantela") "now I report to Cindy Stern so she is aware of my schedule." Rosensweig Decl. ¶ 21, Ex. Q.  From August 2006 until her termination in January 2007, Plaintiff reported directly to Stern, and was required to and did notify Stern when she planned to work from home or otherwise be out of the office.  Decl. of Cynthia D. Stern ("Stern Decl.") ¶ 3, Ex. A.  Plaintiff was also required to notify Stern of any changes she wished to make to her work schedule.  Id. ¶ 4, Ex. B.  On November 21, 2006, Stern advised Plaintiff that she did not have any more PTO (Paid Time Off) available.  Id. ¶ 6.  On November 27, Stern met with Plaintiff to discuss various issues relating to Plaintiff's work

performance and attendance. Id. ¶ 7, Ex. C. Plaintiff advised Stern that Plaintiff had not yet contacted HR about the need to update Plaintiff's FMLA forms. Id. ¶ 8. On January 2, 2007, Plaintiff advised Cantela, "[y]ou may want to check with Cindy Stern regarding my attendance – I filled out the FML forms – I submitted to HR however they have not been signed by a manager as yet." Rosensweig Decl. ¶ 22, Exhibit R. Stern repeatedly asked Plaintiff to update her FMLA forms. Stern Decl. ¶ 5. As with respect to O'Connor, Plaintiff was further aware as of December 4, 2006 that Stern was involved in the formal performance evaluation process. Rosensweig Decl. ¶ 26, Ex. V. On January 5, 2007, Plaintiff sent an email to Stern stating: "As we discussed, from Jan. – March I need to work from home on Monday. Let me know what you need." Id. ¶ 10, Ex. E. Stern had previously questioned Plaintiff about this change in her schedule. Id. ¶ 11.

In June 2006, DeRoche suggested to Plaintiff that she reapply for FMLA leave. Deroche Decl. ¶ 4. DeRoche told Plaintiff that AXA had no record that she was currently approved for FMLA leave, which could expose her to disciplinary action based on her attendance record, and she should promptly reapply. Id. On December 14, 2006, Plaintiff advised DeRoche, "I have forms to bring to you let me know when you may have 15 minutes

to review." Id. ¶ 5, Ex. B.  On December 20, 2006, Plaintiff sent an email to DeRoche stating "I would like to meet with you for 10 minutes any day this week - I am not in on Friday.  I will then give you all the forms - just need to clarify hours to work section with you."  Id. ¶ 6, Ex. C.  Plaintiff submitted to DeRoche a Request for Family Medical Leave Form dated December 14, 2006.  Id. ¶ 7, Ex. D.  On January 31, 2007, Plaintiff was notified by O'Connor and DeRoche that her employment was being terminated.  Id. ¶ 8.

Plaintiff knew as of May 31, 2006, that Dennis headed the Customer Marketing Group, which contained the Customer Retention & Cross-Sales Department in which Plaintiff worked.  On July 12, 2007, AXA sent a copy of the Customer Marketing Group December 2006 Reorganization Justification Document to Plaintiff's counsel.  Rosensweig Decl. ¶ 24, Ex. T.  This document, signed by Dennis, explained that Plaintiff's position was being eliminated and that she was not qualified for the new position being created.

In Kilvitis v. County of Luzerne, the Honorable Thomas I. Vanaskie held that plaintiff, by attaching to the complaint a copy of her termination letter that was signed by the individual defendant, had presented sufficient facts to support her FMLA

14

claim against him. 52 F. Supp. 2d 403, 416 (M.D. Pa. 1999). However, because "[d]iscovery [might] reveal that [the individual defendant] [did] not qualify as [plaintiff's] employer under the FMLA," defendant was "not precluded from moving for summary judgment on [this] ground[] following completion of discovery." Id. at 416 n.10. Here, with respect to each proposed individual defendants' control over Plaintiff's ability to take leave and her termination, AXA has demonstrated that at the time she filed her original Complaint on September 26, 2007, Plaintiff was aware of facts at least as compelling as a signature on a termination letter. Plaintiff therefore had sufficient information to assert claims against the proposed individual defendants well in advance of the deadline to amend the Complaint.

Plaintiff has contended that she could not have stated a claim against the proposed individual defendants under the FMLA until after she received AXA's March 11 document production because until then she had no way of knowing who was responsible for her rate and method of pay. As discussed above, Plaintiff was under no duty to plead that the proposed individual defendants were responsible for her rate and method of pay.

15

Under these circumstances, Plaintiff cannot establish "good cause," and it is in the Court's discretion to deny leave to amend. Parker, 204 F.3d at 340-41 (affirming denial of leave to amend complaint in light of scheduling order where plaintiff had all the information necessary to support claim at time of initial filing); Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (same); Trezza v. NRG Energy, Inc., 06 Civ. 11509 (DF), 2008 WL 540094, at *6 (S.D.N.Y. Feb. 28, 2008) ("[N]othing in [plaintiff's] motion papers or in any of his other submissions to the Court suggests that he was unaware of the facts necessary to amend his pleading until after the deadline had passed."); Rent-A-Center, Inc., v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003) ("[D]efendants' failure to comply with the Court's Scheduling Order resulted from a lack of diligence, because the substance of the defendants' 'new' claim was known when the defendants filed their original amended answer and added their counterclaim.").

### B. The Discovery Provided the Basis for the NYC Human Rights Laws Claim and Constituted Good Cause

In her proposed Amended Complaint, Plaintiff seeks to assert a new cause of action for associational discrimination and punitive damages under the New York City Administrative Code

16

§§ 8-107(1)(a) and 8-107(20) against AXA, Dennis, O'Connor, Stern and DeRoche.  Amended Complaint ¶¶ 47-54.

On March 27, 2008 and April 8, 2008, counsel exchanged correspondence with respect to leave documents.  Defendant's counsel responded that "Defendant has not located leave requests prior to 2006."  Reply, Ex. F.  In response to a subpoena served by Defendant, one of Plaintiff's medical providers supplied a past FMLA form that Plaintiff had submitted to AXA, dated December 27, 2002.  Plaintiff's daughter's physician wrote: "Megan has recurrent respiratory papillomatosis involving the larynx and trachea which recurs monthly and obstructs her airway."  Reply, Ex. G.  In light of this document, the Court will permit Plaintiff to amend her Complaint to include the NYCAC claim against AXA.  Defendants have submitted testimony and documents to support its argument that at the time she filed the original Complaint, Plaintiff knew AXA to have some knowledge of her daughter's medical condition.  See Def. Opp. 15-16.  However, the parties' papers do not make the extent of this knowledge entirely clear.

There is no indication that Plaintiff's delay in seeking to amend the Complaint is the result of bad faith or dilatory motive.  On the contrary, it appears that Plaintiff's

17

counsel missed the deadline for amendment due to extensions to the discovery deadline requested by the Defendant, to which Plaintiff's counsel consented. Nor has Defendant demonstrated any undue prejudice that will result from permitting amendment of the Complaint to include this additional claim. While Plaintiff should have sought an extension of the time to amend, even in the absence of such an extension and after the applicable deadline, an amendment will be permitted. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) ("[I]t is within the sound discretion of the district court whether to grant or deny leave to amend.").

## V.   CONCLUSION

For the above-stated reasons, the motion to amend the Complaint to add the individual defendants is denied and the motion to add a cause of action under the NYCAC is granted.

It is so ordered.

New York, NY
November 20, 2008

ROBERT W. SWEET
U.S.D.J.